Patrick A. ROSSI, Plaintiff,

v.

TROY STATE UNIVERSITY, et al., Defendants.

No. CIV.A. 01–A–1319–N.

United States District Court, M.D. Alabama, Northern Division.

July 22, 2002.

Order Denying Motion to Alter or Amend Sept. 3, 2002.

Nicholas J. Cervera, Grady A. Reeves, Cervera, Ralph & Butts, Troy, AL, for Troy State University, Jack Hawkins, Defendants.

Richard B. McClelland, Dickey & McClelland, Montgomery, AL, Alvin T. Prestwood, Prestwood & Associates PC, Montgomery, AL, for Patrick A. Rossi, Plaintiff.

### *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

## I. *INTRODUCTION*

This cause is before the court on a Motion for Summary Judgment (Doc. # 10) filed by the Defendants Troy State University ("TSU") and Jack Hawkins ("Chancellor Hawkins" or "Hawkins") (collectively "Defendants").[1]

The Plaintiff, Patrick Rossi ("Rossi"), brings claims of religious discrimination pursuant to 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1983 against TSU and Hawkins.

For reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

---

1. Jack Hawkins is the Chancellor of Troy State University.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court, that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. FACTS

The submissions before the court, viewed in the light most favorable to the non-movant, establish the following facts:

Patrick Rossi is an associate mathematics professor at Troy State University. Rossi is also a practicing Jehovah's Witness.

Rossi initially gained employment as an assistant professor in August of 1993. After working for four years, Rossi applied for a promotion to associate professor in October of 1997. This application was denied. Rossi applied again in October of the following year and was promoted and granted tenure in March of 1999.

During this time period, the mathematics department was vacant of an appointed "Chair". Diane Porter, another professor in the mathematics department, served as Acting Chair from 1996 until 1998. In 1998, Rossi was named Acting Chair by the Dean of the Arts and Sciences College, Robert L. Pullen ("Dean Pullen"). Rossi served as Acting Chair until August 7, 2000, at which time he resigned this position. At this time, Chancellor Hawkins sought to appoint the full Chair of the Mathematics Department. Rossi removed himself from consideration. Based upon a recommendation by Dean Pullen, Chancellor Hawkins appointed Diane Porter as the Department Chair. Rossi remains a full time mathematics professor.

## IV. DISCUSSION

Rossi brings claims in this case pursuant to Title VII and 42 U.S.C. § 1983 against both Hawkins and TSU. Apparently there is some confusion as to which claims are brought against which Defendant which the court will address at the outset.

■ From the Complaint, it appears that both Hawkins and TSU are sued under Title VII; however, it is well established in this circuit that a Title VII action will not lie against an individual employee. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("Individual capacity suits under Title VII are . . . inappropriate"); *Cross v. State of Alabama Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir.1995). Chancellor Hawkins is therefore due to be dismissed from the Title VII claim.

■ In Count II of the Complaint, there are allegations pursuant to § 1983 against Hawkins in both his individual and official capacity. Since a suit for damages against an individual in his official capacity pursuant to § 1983 is the same as a suit against the entity which the individual represents, the official capacity claim for damages is a claim against TSU. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). TSU is considered an agency or instrumentality of the state of Alabama and is thus entitled to Eleventh Amendment immunity in federal suits. *See Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir.1985). Because of this, TSU and Hawkins in his official capacity are due to be dismissed from the § 1983 claim for damages. *See Manders v. Lee*, 285 F.3d 983, 990 (11th Cir.2002) (state instrumentality or agent entitled to Eleventh Amendment immunity). The claim for prospective injunctive relief against Hawkins, however, is not deemed a claim against the state. *See Cross v. State of Ala. Dept. of Mental Health and Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir.

1995). Thus, the Eleventh Amendment does not bar the claim against Hawkins for prospective injunctive relief. *Id.*

Finally, in the Plaintiff's Response to the Motion for Summary Judgment, Plaintiff concedes that the claim for damages against Hawkins in his individual capacity should be dismissed. The court therefore finds that this claim is also due to be dismissed.

Based on these findings, including the Plaintiff's own admissions, the court concludes that the only remaining claims for the court to consider are the Title VII claims against TSU and the claim for prospective injunctive relief brought under § 1983 against Hawkins in his official capacity.

### A. TITLE VII

Although set out vaguely, the Plaintiff apparently is asserting a hostile work environment claim, a failure to promote on the basis of religion, and another disparate treatment claim. As there is no allegation that TSU refused to allow Rossi to practice his religion, the court finds no failure to accommodate claim.

### 1. Hostile Work Environment

The Complaint does not clearly distinguish between the different claims under Title VII, however the court has considered each of the possible claims. In the Complaint, the Plaintiff argues that "the Plaintiff's supervisory chain has humiliated and embarrassed him because of his adherence to the religion of Jehovah Witness[,]" and "have sought to treat the Plaintiff in such a fashion as to cause him to resign." *See* Complaint, ¶¶ 6, 7. Other than these, there are no express allegations contained in the Complaint that the Plaintiff was subjected to a hostile work environment. Despite this lack of a specific allegation, the court will construe these allegations in the Complaint as a hostile

work environment claim for the purposes of this motion.

While there are very few reported cases dealing with hostile work environment claims on the basis of religion, the standard of proof under Title VII remains the same regardless of the discrimination alleged. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999); *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 277 (3rd Cir.2001).

 In order for a Plaintiff to set out a prima facie claim for hostile work environment, the Plaintiff must establish: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome harassment; (3) that the harassment was based on the religion of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment; and (5) a basis for holding the employer liable. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000) (in the sexual harassment context); *see also Hafford*, 183 F.3d at 512 (applying standard to religious discrimination claim). Factors which can be considered are the frequency and severity of the conduct, whether it is physically threatening or humiliating, and to what degree it reasonably interferes with the plaintiff's job performance. *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir.2002).

 Assuming that Rossi can establish the first three prongs of this test, the Plaintiff has failed to establish that the conduct alleged was sufficiently severe or pervasive or has altered the terms and conditions of employment. Title VII is violated when the workplace "is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). There are no such allegations in this case. Plaintiff asserts

that Dean Robert Pullen and his wife, who were initially cordial to Rossi, became resentful after learning of Rossi's religious faith in 1993. Rossi further alleges that the Pullens have "interfered" with his work. The only substantiation of this broad allegation is the Plaintiff's own non-specific affidavit to the EEOC. *See* Complaint, Exhibit 1. Plaintiff also asserts that Diane Porter was insubordinate to him and Dean Pullen did not discipline her. *See* Response to Motion for Summary Judgment, Rossi Affidavit, page 4. There is no allegation that religion played any part in this. Plaintiff presents no other evidence of a hostile working environment outside of conclusory allegations of harassment. *See* Response, page 11 ("he was harassed in his work"). Furthermore, Rossi has worked with or under Pullen for nine years, during which time Pullen recommended Rossi for tenure and promotion and appointed him as Acting Chair of the mathematics department in 1998. *See* Defendants Exhibits E and I. Rossi has also worked with Diane Porter for the same length of time and has reported no specific instances of hostile behavior, nor any evidence that she was even aware of his religion. These allegations cannot suffice for a hostile working environment claim. And, since Rossi's charges of specific disparate treatment, discussed hereafter, do not survive summary judgment, they do not help the claim of hostile work environment based on religious discrimination. Therefore, the court finds that the Plaintiff cannot sustain a prima facie case of hostile working environment and the Defendant TSU is entitled to summary judgment on this claim.

### 2. Failure to Promote

Since the Plaintiff has provided no direct evidence of discrimination in this case, the court will employ the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). If a plaintiff can set out a prima facie case of discrimination, then the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant is able to do so, the plaintiff bears the burden of showing that defendant's proffered reason is merely pretext for discrimination." *See id.* at 804, 93 S.Ct. 1817.

■ In order to establish a prima facie case of discriminatory failure to promote, Rossi must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the protected group was given the position. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1333 (11th Cir.1998).

■ Rossi's allegations consist of two separate instances of alleged failure to promote on the part of TSU. The first is where Rossi's application to be promoted to associate professor was denied in 1997. The second is Rossi's contention that, even though he withdrew his application for the position, he was discriminated against when TSU failed to make him chair of the mathematics department in 2000. Rossi's failure to apply for this position does not bar his claim if he can show that an application would have been a futile gesture. *See Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406 (5th Cir.1999) (citing *Claiborne v. Illinois Cent. R.R.,* 583 F.2d 143, 150 (5th Cir.1978)).[2]

After serving four years as an assistant mathematics professor, Rossi applied for and was denied the position of associate mathematics professor in 1997. Rossi contends that he was not promoted because he is a practicing Jehovah's Witness. This establishes both the first two prongs of the Plaintiff's prima facie case because Rossi did not receive the position and religion is protected by Title VII. See 42 U.S.C. § 2000e–2 ("race, color, religion, sex, or national origin"). The third factor is more difficult, however, as the Defendants contest whether Rossi was qualified for this position at the time. Defendants submit irrefuted evidence that a teacher must be employed for five consecutive years before being promoted to associate professor.[3] *See* Defendants' Exhibit B, page 31. Rossi admits that he had only been employed for four years, however argues that "it was customary for persons to apply for promotion" prior to five years. *See* Response to Motion for Summary Judgment, Affidavit of Rossi, page 1. Rossi was allowed to apply for the position, however he was denied because he had not worked the requisite five years. Rossi has not offered any evidence of anyone who applied after four years and was subsequently promoted prior to the time listed in the guidelines. The Plaintiff by his own admission was not qualified for the position at the time of the application. The court thus cannot find that the Plaintiff can establish a prima facie case. Furthermore, when Plaintiff applied in the following year, and was qualified, his promotion and tenure were granted, with the strong recommendation of Dean Pullen. *See* Def. Exh. E. Thus, Rossi is attempting to substitute this religious discrimination argument for what is

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

3. There is a provision in the guidelines that a teacher could be promoted with only three consecutive years of employment at TSU if the teacher had been employed for a total of five consecutive years including some other accredited university prior to TSU. *See* Defendants Exhibit B, page 31. Rossi has submitted no allegation that he qualified under this provision.

admitted to be a valid reason to withhold promotion. The court finds no basis for this and summary judgment is due to be granted to TSU on this claim.

■ Plaintiff's other Title VII claim surrounds the position of Chair of the Mathematics Department. The parties dispute whether this is a permanent position, however the court finds that this is irrelevant for the court's determination of this motion. The position is full time and it certainly constitutes a tangible change in employment status, whether it is monetary or purely more prestigious. A failure to promote to the chair of the department could create a Title VII claim.

After resigning his position as acting Chair, Rossi claims that he did not reapply for the position of Chair of the Mathematics Department at the request of Dean Pullen. *See* Response, Affidavit of Rossi, ¶ 11. Even though Rossi's application was not considered by the Chancellor, the court will assume, for the purposes of this motion, that he applied because it is alleged that Rossi wanted the position and Dean Pullen told him to not submit an application. This allows Rossi to still make a prima facie claim of discriminatory failure to promote. Rossi is a member of a protected group, he was qualified for the position, he did not get the position and someone outside of his class, Diane Porter (an Episcopalian), did receive the promotion.

■ TSU, however, contends that the promotion of Diane Porter was not based on any religious basis. It is agreed that Chancellor Hawkins was not even aware of Rossi's religious affiliation and based his decision on the recommendation of Dean Pullen and the Provost, Fred Davis. *See* Response, page 3, 8; Def. Exh. H. The Eleventh Circuit has recently held that a discriminatory failure to promote or hire is not actionable where the decision-maker is shown to not be aware of the

applicant's religion. *See Lubetsky v. Applied Card Systems, Inc.,* 296 F.3d 1301, 1307 (11th Cir.2002). Despite this, since Chancellor Hawkins made his decision based only on the applicants recommended by Dean Pullen, the court must consider TSU's liability even though Chancellor Hawkins was not aware of Rossi's religion. It is alleged that Dean Pullen was aware of Rossi's religious affiliation, and did not recommend Rossi for the position, therefore the court will still consider that Rossi can make out a prima facie case.

In his affidavit to the court, Dean Pullen asserts that he did not recommend Rossi because Rossi "was not a strong leader or administrator" during the time he served as Acting Chair of the department and that Diane Porter was deemed more capable based upon the comparative success of her performance in her earlier service for two years as Acting Chair. *See* Def. Exh. I. The Provost concurs in his affidavit. *See* Def. Exh. K. Since this is a legitimate nondiscriminatory reason, the Plaintiff bears the burden of proving that this reason is merely pretext for discrimination. *See Rojas,* 285 F.3d at 1342. The Plaintiff has not satisfied this burden in this case. Rossi has offered no evidence whatsoever that this explanation was merely pretext for religious discrimination. The Plaintiff alleges that Dean Pullen and his wife were aware of Rossi's religion and were not as friendly to him after becoming aware of this fact. Dean Pullen, however, had this knowledge at the time he strongly recommended Rossi for tenure and promotion to associate professor, and also at the time Rossi was placed in the position of Acting Chair to give him a chance to prove himself as an administrator. (See Def. Exh. I). Plaintiff also alleges that the other applicants were less qualified and all members of other religions, however there are no specific allegations or evidence to conclude that Dean Pullen's reason for not promoting Rossi was in fact a "coverup"

for religious discrimination. *See Id.* (quoting *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817). Therefore, the court finds that the Plaintiff has not satisfied his burden in proving pretext and consequently, summary judgment is due to be granted in favor of TSU on this claim.

### 3. Release Time

Rossi also asserts a disparate treatment claim on the basis that he was not provided release time for services as a computer laboratory administrator as were other administrators at TSU. Dean Pullen submits in his affidavit that it is College of Arts and Sciences policy to not allow release time for these duties. *See* Def. Exh. I, page 1, ¶ 5. Rossi has provided no evidence of any other person in the College of Arts and Sciences who at any time was given release time for similar duties. He states by affidavit that computer laboratory administrators in other colleges at TSU were provided release time, but gives no names, no comparison of duties, and no dates. Furthermore, administrators in other colleges would not have been given release time by Dean Pullen, the Dean of the College of Arts and Sciences.

The court finds that the Plaintiff has not established a prima facie case of disparate treatment in this case because he has not sufficiently shown that similarly situated persons outside of his protected class were treated differently. Even if the Plaintiff were able to establish a prima facie case, TSU has submitted a legitimate nondiscriminatory reason for the employment action and the Plaintiff has offered no evidence that this reason is a pretext for religious discrimination. Thus, TSU is also entitled to summary judgment on this claim.

### B. PROSPECTIVE INJUNCTIVE RELIEF

Plaintiff mentions prospective injunctive relief in his Brief in Opposition to the Motion for Summary Judgment. Prospective injunctive relief asks this court to enjoin a state official from a continuing violation of a federal law. *See Harbert Intern., Inc. v. James,* 157 F.3d 1271, 1278 (11th Cir.1998). Based upon the Complaint, the court must assume that the Plaintiff contends that Hawkins is violating federal law by discriminating against him on the basis of religion. *See* Complaint, page 5. As the Plaintiff has provided no credible claims of religious discrimination, the court finds no grounds that would support injunctive relief in this case. Therefore, summary judgment is also due to be granted on this claim.

### V. CONCLUSION

Rossi obviously strongly considers himself to have been more qualified to serve as Chair of the Mathematics Department than the person placed in that position and has convinced himself that the reason he was not selected must have been that he is a Jehovah's Witness. There is simply insufficient evidence, however, from which a reasonable jury could conclude that such religious discrimination was the reason for this, or any other, adverse employment decision, or that Rossi was subjected to a hostile working environment because of his religion.

For the reasons discussed, the court finds that summary judgment is due to be granted in favor of Troy State University and Jack Hawkins and against Patrick Rossi. A separate order will be entered in accordance with this opinion.

### *MEMORANDUM OPINION AND ORDER*

### I. *INTRODUCTION*

On July 22, 2002 this court issued a Memorandum Opinion, along with a sepa-

rate Order, granting summary judgment in favor of the Defendants, Troy State University ("TSU") and Jack Hawkins ("Hawkins").[1] This cause is before the court on a Motion to Alter, Amend or Vacate Judgment (Doc. # 21) filed by the Plaintiff, Patrick Rossi ("Rossi"). Rossi requests the court revisit its decision in light of deposition testimony not previously considered.

For the reasons to be discussed, the Motion to Alter, Amend or Vacate Judgment is due to be DENIED.

## II. FACTS AND PROCEDURAL HISTORY

The facts, as they are relevant to this motion are as follows:

Rossi is a tenured associate mathematics professor at TSU. In his Complaint, Rossi alleged various allegations of religious discrimination pursuant to 42 U.S.C. § 2000e et seq.("Title VII") against TSU and Hawkins. Among those claims was a failure to promote on account of religion. Rossi alleged that TSU did not promote him to the position of Chair of the Mathematics Department because he is a Jehovah's Witness. In the court's Memorandum Opinion dated July 22, the court found that Defendant TSU had given a legitimate non-discriminatory reason for not promoting Rossi. The court further found that Rossi had provided no evidence that TSU's legitimate non-discriminatory reason was pretext for discrimination. Based upon this, the court granted summary judgment in favor of TSU on the failure to promote claim. Rossi contends that this finding was in error, and now supplements his lack of evidentiary support for pretext with excerpts from a deposition of Dean Robert Pullen ("Dean Pullen" or "Pullen") taken July 10, 2002.

## III. DISCUSSION

■■■ District courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. See Sussman v. Salem, Saxon & Nielsen, 153 F.R.D. 689 (M.D.Fla.1994). Motions for reconsideration generally serve a very narrow function: they are designed solely to correct manifest errors of law or fact or to present newly discovered evidence that could not have been discovered at the time of the original motion. See Fed.R.Civ.P. 60. Because "litigants cannot be repeatedly called upon to backtrack through the paths of litigation," reconsideration of a previous order is an extraordinary remedy to be employed sparingly. Sussman, 153 F.R.D. at 694. Additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration. Villaflores v. Royal Venture Cruise Lines, Ltd., No. 96–2103, 1997 WL 728098, at *2 (M.D.Fla. Nov. 17, 1997), aff'd in part, vac'd in part by Wilkins v. Commercial Inv. Trust Corp., 153 F.3d 1273 (11th Cir. 1998); see also American Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir.1985) (considering new arguments post-order affords parties "two bites at the apple"); Renfro v. City of Emporia, Kan., 732 F.Supp. 1116, 1117 (D.Kan.1990) (noting that a party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration).

### A. AVAILABILITY OF EVIDENCE

■■■ The new deposition testimony submitted by Rossi was available prior to the court's opinion granting summary judgment to TSU, however Plaintiff never submitted any excerpts from the deposition for the court's consideration. The

---

1. Jack Hawkins is the Chancellor of Troy State University.

deposition occurred while the Motion for Summary Judgment was pending, however the court did not receive a request by the Plaintiff to supplement his opposition. If the Plaintiff was short of time, this court grants extensions of time freely if a proper request is timely made by a party, however the Plaintiff made no such request in this case. Furthermore, the Plaintiff has offered no explanation for his failure to submit this evidence in a timely manner, or to take the deposition earlier, or to request an extension of time to submit evidence. The Eleventh Circuit has explicitly held that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." *Mays v. United States Postal Service,* 122 F.3d 43, 46 (11th Cir.1997). Accordingly, the court finds that the motion to reconsider on the basis of newly submitted evidence is due to be denied because the Plaintiff failed to submit the evidence prior to the court's Memorandum Opinion and failed to show good cause why he could not have done so.

Furthermore, the court finds that, even if the new evidence were considered, it would be insufficient to establish that TSU's proffered reason was pretext for discrimination.

### B. *PRETEXT*

 The Chair of the Mathematics Department is appointed by the Chancellor. In August of 2000, Chancellor Hawkins appointed Diane Porter ("Porter") and did not consider Rossi for the position. It has been shown by TSU that Hawkins had no knowledge of Rossi's religion. This normally would suffice to preclude liability on TSU's part, however the court determined that it was actually Dean Pullen who selected the name for Hawkins' approval. *See Lubetsky v. Applied Card Systems,*

*Inc.,* 296 F.3d 1301, 1307 ( 11th Cir.2002) (discriminatory failure to promote not actionable if decision-maker unaware of employee's religion). Consequently, the court determined that Pullen was in fact the decision-maker in this case. Pullen stated that he did not choose Rossi for the position because he "was not a strong leader or administrator" and his "performance was adequate, but was not sufficient to warrant his promotion to Chair." *See* Brief in Support of Summary Judgment, Exh. I, page 2–3. Initially, Rossi offered no evidence to rebut these non-discriminatory reasons. Now Rossi offers deposition excerpts in an attempt to show that Pullen's proffered reasons are untrue and in reality pretext for discrimination.

In the *McDonnell Douglas* burden shifting analysis, after an employer has proffered a legitimate non-discriminatory reason for not promoting the employee, the burden shifts to the Plaintiff to prove that this reason is untrue. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In this case, Rossi seeks to discredit Pullen's reasons through the newly offered deposition testimony.

Plaintiff asserts that Dean Pullen stated in his affidavit three areas where Rossi was not a good leader or administrator: 1) scheduling of classes, 2) availability to the students and faculty, and 3) future planning. *See* Motion to Alter, page 2–3. Rossi alleges that Pullen's deposition tes-

timony refutes each of these reasons and that this in turn refutes Pullen's non-discriminatory reason for not promoting Rossi. *Id.* First, the court finds that these three reasons are stated nowhere in Pullen's affidavit before the court. The court is completely unaware as to their origin. It is inappropriate for Rossi to allege his own nondiscriminatory reasons in place of the employer's reasons and then attempt to refute them. Rossi cannot change Pullen's proffered reasons so that he can create pretext. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000) (a plaintiff cannot recast an employer's proffered nondiscriminatory reasons and must attack employer's reasons "head on"). The deposition testimony arguably casts some doubt on whether Rossi was a good scheduler of classes, was available to students or faculty, or adequately planned the future of the mathematics department, however it does not suffice as a direct attack upon Pullen's statements that Rossi "was not a strong leader or administrator" and that his "performance was adequate, but was not sufficient to warrant his promotion to Chair.". *See* Brief in Support of Summary Judgment, Exh. I, page 2–3. Therefore, the newly provided evidence is insufficient to establish that Pullen's reasons are pretext. *See Combs*, 106 F.3d at 1538 (to establish pretext, employee must establish "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's *proffered* legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.").

 Furthermore, in what appears to be Rossi's continued attempt to argue that he was better qualified than Diane Porter, Rossi has only submitted marginal evidence that he was a better candidate than Porter. In a discriminatory failure to promote case, Rossi cannot simply show that he was better qualified than Porter to establish pretext; Rossi must "adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir.2001) (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir.2001)). At the very best, the deposition testimony of Pullen provides evidence that Rossi and Porter were about the same. A reasonable fact-finder could not conclude that the differences in the qualifications of Porter and Rossi were so great as to deduce that Pullen was not telling the truth. *See Cofield*, 267 F.3d at 1268.

As was found in the court's previous opinion, Rossi has produced insufficient evidence for a reasonable jury to conclude that religion played any part in any of the adverse employment decisions alleged. Rossi has attempted to create pretext through the deposition testimony of Pullen, however the court finds that this testimony, even if considered, would be insufficient to establish that Pullen's proffered reasons for not promoting Rossi were in fact pretext for discrimination.

## IV. *CONCLUSION*

For the reasons discussed, it is hereby ORDERED that the Motion to Alter, Amend, or Vacate Judgment (Doc.# 21) submitted by the Plaintiff, Patrick A. Rossi, is DENIED.