Gladys Gasc DeBAILEY, Plaintiff,

v.

LYNCH–DAVIDSON MOTORS, INC., Defendant.

No. 89–305–Civ.–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

April 9, 1990.

John F. MacLennan, Battman, Eshelman & MacLennan, P.A., Jacksonville, Fla., for plaintiff.

Stephen D. Busey and William W. Deem, Smith & Hulsey, Jacksonville, Fla., for defendant.

## ORDER

SUSAN H. BLACK, Chief Judge.

This case came to be heard on the defendant's Motion To Dismiss Amended Complaint, filed on December 15, 1989. The plaintiff filed a response in opposition on January 5, 1990. Oral argument was held on March 1, 1990.

The facts of the case are as follows. Lynch–Davidson Motors, Inc., the defendant, employed the plaintiff, a Hispanic female, as Manager of the Finance and Insurance Department. In this position, the plaintiff supervised three individuals, had regular customer contact, was responsible for the defendant's relationships with financial institutions, and was paid an annual salary of $40,000. The plaintiff alleges that while she held this position, Raymond McClain, her supervisor, racially and sexually harassed her.

On January 2, 1988, after the plaintiff had allegedly complained to Mike Davidson, the company president, about McClain's behavior, Davidson offered her an opportunity to transfer to a new position entitled "Quality Commitment Person." This new position was located outside of the plaintiff's previous department, required her to work exclusively on the telephone surveying customers regarding their satisfaction with the defendant's business, provided for no personal contact with customers or financial institutions, was not considered to be part of management, and only paid $20,000 per year. The plaintiff agreed to accept the new position because it would allow her to have less contact with McClain. On or about January 17, 1988,

the day before the plaintiff was to begin the new position, McClain informed the plaintiff that she had been terminated on January 15, 1988, due to the animosity that had developed between Davidson and the plaintiff.

On October 13, 1989, the plaintiff filed an Amended Complaint consisting of three counts: Count I alleged sexual discrimination in violation of 42 U.S.C. § 2000e (1982), Count II alleged racial discrimination in violation of 42 U.S.C. § 1981 (1982) [hereinafter "§ 1981"], and Count III alleged a cause of action for defamation.

On February 7, 1990, the Court, needing additional facts beyond those in the pleadings, converted the defendant's motion to dismiss into a motion for summary judgment. The Court provided the parties with additional time to file supplemental filings in opposition to, and in support of, the motion for summary judgment.

## A. SECTION 1981 CLAIMS AFTER PATTERSON

In *Patterson*, the Supreme Court held that claims of racial harassment relating to conditions of employment are not actionable under § 1981. *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In reaching its decision, the Supreme Court relied upon a plain reading of § 1981 and narrowly construed its first guarantee that "[a]ll persons ... shall have the same right ... to make ... contracts."[1] *Id.* 109 S.Ct. at 2372. The Supreme Court found that:

> [t]he statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has

1. Section 1981 provides as follows:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
   42 U.S.C. § 1981 (1982).

been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* at 2372–73.

Additionally, the Supreme Court construed the protection afforded by § 1981 to the enforcement of contracts to extend only to discriminatory conduct that interfered with the right to seek legal redress for the enforcement of contractual claims otherwise cognizable under the statute.

[The right to enforce contracts] embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices.... The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights.

*Id.* at 2373 (citation omitted).

Based upon this analysis of § 1981, the Supreme Court held that claims of on-the-job racial harassment do not involve a refusal to make a contract or the impairment of an employee's right to enforce established contractual rights. Rather, the Supreme Court found that such claims involve conditions of employment which, if actionable, would come under Title VII.[2] *Id.* at 2377

■ The Supreme Court did carve out a narrow exception to its rule that post-formation conduct was no longer actionable under § 1981. The Supreme Court stated that the failure to promote may, in certain circumstances, be akin to the refusal to enter into a new contract for discriminatory reasons.[3] Accordingly,

the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the *promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.*

*Id.* (emphasis added).

Thus far, there have been only a handful of reported cases which have held that the promotion which was denied would have constituted a new and distinct relation between the employee and the employer.[4] The Court agrees that:

**2.** The Supreme Court's reasoning has been extended by the lower federal courts to bar discriminatory discharge actions brought pursuant to § 1981. *See, e.g., Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989); *Mathis v. Boeing Military Airplane Co.,* 719 F.Supp. 991 (D.Kan.1989); *Rivera v. AT & T Information Sys., Inc.,* 719 F.Supp. 962 (D.Colo.1989); *Hall v. Cook County,* 719 F.Supp. 721 (N.D.Ill.1989); *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552 (S.D.Tex.1989). These courts have held that the termination of a person's employment neither relates to the formation of a person's employment relationship, nor to an employee's right to enforce established contractual rights. Instead, termination relates to the terms and conditions of the existing employment contract, which, after *Patterson,* clearly belongs in the Title VII arena.

**3.** The Supreme Court cited to *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), as an example of when a promotion rises to the level of an "opportunity for a new and distinct relation between the employee and the employer." In *Hishon,* a law firm refused to advance an attorney from associate status to that of a partner.

**4.** *See Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989) (promotion from clerk to supervisor with consequent increase in responsibility and pay); *Hudgens v. Harper–Grace Hospitals,* 728 F.Supp. 1321 (E.D. Mich.1990) (two promotions—both involved grade increases and pay raises—first move from supervisory position to technical position, second move from technical position to management position requiring several distinct qualifications from previous position); *Williams v.*

[t]he inquiry is fact-specific and embodies no single criterion. It comprehends all relevant factors, including pay, duties, responsibilities, status as hourly or salaried employee, method of calculating salary, required qualifications, daily duties, potential liability, and pension and other benefits. Higher pay, by itself, will not transform a promotion into a new and distinct relation.

*Brown v. American Food Serv. Corp.,* 1990 WL 10021, 1990 U.S. Dist. LEXIS 1214 (E.D.Penn. Feb. 6, 1990).[5]

## B. SECOND POSITION MET "NEW & DISTINCT RELATION" TEST

■ The defendant, relying upon *Patterson,* filed its motion to dismiss alleging that Count II of the plaintiff's Amended Complaint failed to state a claim upon which relief could be granted. The defendant alleges that the second position did not meet the narrow exception carved out by the *Patterson* court for new and distinct relations. In support of this contention, the defendant states that the second position still required day-to-day control of the plaintiff by the defendant, required the plaintiff to report directly to a supervisor, and compensated the plaintiff on terms set by the defendant. Therefore, the defendant contends that what was to take place was a change in job duties within the context of an existing employment relationship. Accordingly, the defendant alleges that the plaintiff's § 1981 claim must fail since it alleges post-formation conduct, which, after *Patterson,* is no longer actionable under § 1981.

The Court cannot agree with the defendant's characterization of the facts and their legal significance. The Court finds that the second position which the defendant denied to the plaintiff would have created a new and distinct relationship between the employee and the employer. The plaintiff was to have gone from a supervisory position to a non-supervisory position, her job responsibilities were to have been completely altered, and her pay was to have been cut in half. Although the Supreme Court in *Patterson* construed the "new and distinct relation" test in the context of a discriminatory denial of a promotion, this Court can see no reason why such an analysis should not apply equally when a discriminatory denial of a demotion has occurred.[6] The Court finds that, as a matter of law, the second position would have created a new and distinct relation, the denial of which is still actionable under § 1981. Therefore, the Court will deny the defendant's Motion To Dismiss Amended Complaint, filed on December 15, 1989.

Accordingly, it is

ORDERED that the defendant's Motion To Dismiss Amended Complaint, filed on December 15, 1989, is denied.

DONE AND ORDERED.

*Chase Manhattan Bank,* 728 F.Supp. 1004 (S.D. N.Y.1990) (promotion from assistant manager to officer of the bank's branch office with consequent increase in supervisory responsibility and salary modification); *Green v. Kinney Shoe Corp.,* 728 F.Supp. 768 (D.C.D.C.1989) (promotion from manager-in-waiting to manager would have changed method of evaluation, salary, and responsibilities); *Miller v. Shawmut Bank of Boston,* 726 F.Supp. 337 (D.Mass.1989) (promotion to personal banker from customer services representative); *Luna v. City and County of Denver,* 718 F.Supp. 854, 856–57 (D.Colo. 1989) (substantial differences between two positions regarding supervisory responsibility, duties performed, and required qualifications).

5. A promotion from one supervisory position to another, in and of itself, does not meet the *Patterson* test. *See Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552 (S.D.Tex.1989); *Williams v. National RR Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989).

6. This is not the typical § 1981 demotion claim whereby the plaintiff is suing because of a discriminatory demotion. Rather, this case involves the situation where the plaintiff is suing because she did not receive the desired new position which constituted a demotion. The key difference being that the demotion took place in the former scenario, while the demotion never occurred in the latter.