**Gladys A. MCMILLAN, Plaintiff,**

v.

**REGENERATION TECHNOLOGIES, INC., A D, Defendant.**

**No. 5:01CV129OC10GRJ.**

United States District Court, M.D. Florida, Ocala Division.

Nov. 14, 2002.

Larry H. Colleton, Larry H. Colleton, P.A., Orlando, FL, Michelle Dye Neumann, Weinhaus, Dobson, Goldberg & Moreland, St. Louis, MO, for Gladys A. McMillan, plaintiff.

Gladys A. McMillan, Alachua, FL, pro se.

Richard C. McCrea, Jr., Luisette Gierbolini, Zinober & McCrea, P.A., Tampa, FL, for Regeneration Technologies, Inc., defendant.

Janet Parker Ailstock, J. Parker Ailstock, P.A., Gainesville, FL, for University of Florida Tissue Bank, Inc., defendant.

## ORDER

HODGES, District Judge.

In this employment action, the Plaintiff alleges that during her employment with the Defendant, she was denied promotional opportunities on the basis of her race in violation of Title VII and 42 U.S.C. § 1981, that she was retaliated against for complaining about the alleged disparate treat-

ment in violation of Title VII and Florida's Whistleblower Act, and that she endured a hostile work environment. The Defendant has moved for Summary Judgment (Doc. 27) and argues that: (1) the Plaintiff cannot establish a prima facie case under Title VII for a denial of any promotional opportunities; (2) the Plaintiff did not suffer any retaliation by the Defendant; and (3) the Plaintiff did not endure a hostile work environment.

For the reasons that follow, the Court finds that the Defendant's motion for summary judgment is due to be granted in all respects.

## Background

In December 1997, the Plaintiff began her employment with the University of Florida Tissue Bank, Inc.,[1] and the Defendant, Regeneration Technologies, Inc.[2] The Plaintiff was initially hired as an Administrative Assistant to the Tissue Bank's Chief Executive Officer, and has received several "promotions" and "reclassifications," during the course of her employment. In fact, in 1999 the Plaintiff received a raise in her annual salary from $35,000 to $40,000,[3] and in June 2000, the Plaintiff received another raise from $40,000 to $44,000.[4] There is some dispute as to whether the Defendant "promoted" or "reclassified" its employees; however, for purposes of this Order, the Court will view the facts in the light most favorable to the Plaintiff, and consider the disputed employment actions to be "promotions."

The Plaintiff alleges that in 1999 and 2000, she was denied several promotional opportunities. Specifically, the Plaintiff alleges that she was denied the following positions: (1) Telecommunications Specialist in December 1999; (2) Sales Project Coordinator in March 2000; (3) International and Domestic Sales Coordinator in March or April 2000; (4) Benefits Manager in January 2000; (5) Staffing Manager in March 2000; and (6) Compensation Manager in 2000.[5] The Plaintiff further alleges that as of August 2000, the Defendant ceased contributing to her salary and refused to recognize her as its employee. Additionally, the Plaintiff filed her Charge of Discrimination on September 18, 2000, and alleges that in response, the Tissue Bank "froze" her salary in October 2000.[6] The Plaintiff also alleges that in retaliation for her complaints about the Defendant's alleged employment discrimination, she has been "shunned" and "alienated" by her colleagues. The Defendant has moved for summary judgment as to all of these claims.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[7] As the Supreme Court held in

---

1. The University of Florida Tissue Bank, Inc., has changed its name to the Southeast Tissue Alliance.

2. For purposes of their Summary Judgment Motion, the Defendant accepts the Plaintiff's assertion that she was employed, in part, by the Defendant until August 2000.

3. Doc. 27, Ex. 1.

4. Doc. 28, Deposition of McMillan, page 298.

5. Doc. 28, Deposition of McMillan, 141–44.

6. Doc. 28, Deposition of McMillan, 285.

7. *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

*Celotex Corp. v. Catrett,* the moving party bears the initial burden of establishing the nonexistence of a triable fact issue.[8] If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[9] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[10]

### Title VII Burden Shifting Framework

#### 1. Failure to Promote Claims

Title VII makes it unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."[11] And, in a Title VII action, the Plaintiff bears the burden of proving her prima facie case, by way of direct, statistical, or circumstantial evidence.[12]

■ In the absence of either direct or statistical evidence of discrimination, a Plaintiff must rely on circumstantial evidence in order to establish her prima facie case. Thus, pursuant to the burden shifting framework established by the Supreme Court in *McDonnell Douglas,*[13] in order to prevail on her discriminatory failure to promote claims, the Plaintiff must show:

(1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less qualified employees who are not members of the protected minority received the promotion.[14] Then, if the Plaintiff establishes facts that are adequate to permit an inference of racial discrimination, the burden of production shifts to the Defendant to rebut the inference of discrimination by offering "legitimate, non-discriminatory reasons" for the Defendant's rejection of the Plaintiff for the promotion.[15]

If the Defendant meets its burden of production, in order to survive summary judgment, the Plaintiff must present evidence to demonstrate that the Defendant's articulated reason for promoting a non-Black employee instead of the Plaintiff is a mere pretext for discrimination.[16] To meet this burden, the Plaintiff "may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."[17] And, the Supreme Court has held that on the issue of whether an employer's explanation is pretextual, "the trier of fact may still consider evidence establishing the Plaintiff's prima facie case and inferences properly drawn therefrom."[18]

---

**8.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**9.** *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987).

**10.** *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

**11.** 42 U.S.C. § 2000e–2(a).

**12.** *Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997).

**13.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**14.** *A.M. Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir.2000). The Defendant does not dispute that the Plaintiff is a member of a protected minority.

**15.** *Id.*

**16.** *Id.*

**17.** *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**18.** *Id.*

### 2. Retaliation

Title VII also makes it unlawful for an employer to discriminate against an employee that has engaged in statutorily protected expression.[19] And, the Court has held that a claim for retaliation pursuant to 42 U.S.C. § 2000e–3, is subject to the *McDonnell Douglas* burden shifting framework.[20]

Thus, in order to establish her prima facie case of retaliation, the Plaintiff must show that she has suffered an adverse employment action, and that such action was causally related to her complaint.[21] Then, if the Plaintiff establishes her prima facie case, the Defendant may proffer legitimate, non-discriminatory reasons for its employment action, and the Plaintiff must offer evidence to demonstrate that the Defendant's reasons are a mere pretext for retaliation.[22] If the Plaintiff creates an issue of fact as to the reasonableness of the Defendant's actions, then summary judgment for the Defendant would be inappropriate.

### Title VII Discussion

The Court will address each of the Plaintiff's allegations, construing the facts in the light most favorable to her.

#### 1. Failure to Promote Claims

##### a. Telecommunications Specialist

The Plaintiff alleges that she was denied the Telecommunications Specialist position in December, 1999, because of her race. At the time the position became available, the Plaintiff's annual salary was $40,000,[23] and the annual salary for a Telecommunications Specialist was $28,500.[24] In order to accept the position, the Plaintiff would have been required to suffer a substantial loss in salary.

■ The inquiry into whether a denied "promotion" is sufficient to constitute a claim under Title VII, includes a consideration of the salary at issue.[25] In fact, higher pay alone will not render a "promotion" sufficient to state a failure to promote claim.[26] Accordingly, upon due consideration, the Court concludes that the Telecommunications Specialist position, which would require the Plaintiff to suffer a substantial loss in salary, is not a "promotion" as a matter of law sufficient to state a claim under Title VII. Thus, the Defendant's motion for summary judgment is due to be granted as to this claim.

##### b. Sales Project Coordinator

■ The Plaintiff alleges that she was denied the Sales Project Coordinator position in March, 2000, because of her race. At the time the position became available, the Plaintiff's annual salary was $40,000,[27] and the annual salary for a Sales Project Coordinator was $24,900.[28] In order to accept the position, the Plaintiff would have been required to suffer a substantial loss in salary.

Accordingly, the Court concludes that the Sales Project Coordinator position, which would require the Plaintiff to suffer

---

**19.** 42 U.S.C. § 2000e–3.

**20.** *Chambers v. Walt Disney World Co.,* 132 F.Supp.2d 1356, 1368 (M.D.Fla.2001).

**21.** *Holifield,* 115 F.3d at 1566; *See also Shannon v. BellSouth Telecommunications, Inc.,* 292 F.3d 712, 715 (11th Cir.2002).

**22.** *Holifield,* 115 F.3d at 1566; *See also Shannon,* 292 F.3d at 715.

**23.** Doc. 27, Ex. 1.

**24.** Doc. 38.

**25.** *DeBailey v. Lynch–Davidson Motors, Inc.,* 734 F.Supp. 974, 976–77 (M.D.Fla.1990).

**26.** *Id.* at 977.

**27.** Doc. 27, Ex. 1.

**28.** Doc. 38.

a substantial loss in salary, is not a "promotion" as a matter of law sufficient to state a claim under Title VII. Thus, the Defendant's motion for summary judgment is due to be granted as to this claim.

### c. *International and Domestic Sales Coordinator*

■ The Plaintiff alleges that she was denied the International and Domestic Sales Coordinator position in March, 2000, because of her race. At the time the position became available, the Plaintiff's annual salary was $40,000,[29] and the annual salary for an International and Domestic Sales Coordinator was $35,290.[30] In order to accept the position, the Plaintiff would have been required to suffer a loss in salary.

Accordingly, the Court concludes that the International and Domestic Sales Coordinator position, which would require the Plaintiff to suffer almost a $5,000 loss in salary, is not a "promotion" as a matter of law sufficient to state a claim under Title VII. Thus, the Defendant's motion for summary judgment is due to be granted as to this claim.

### d. *Benefits Manager*

■ The Plaintiff alleges that she was denied the Benefits Manager position in January, 2000, because of her race. The position was filled by Lynn Powell, an African American. The Plaintiff concedes that Lynn Powell is an "African American just like Plaintiff." [31] Accordingly, because the Plaintiff has failed to establish her prima facie case as to this claim, the Defendant's motion for summary judgment is due to be granted.[32]

### e. *Staffing Manager*

■ The Plaintiff alleges that she was denied the Staffing Manager position in March, 2000, because of her race. The Defendant contends, however, that it hired Jean Powell to fill the position instead of the Plaintiff because Powell was more qualified than the Plaintiff.

Specifically, the Defendant claims that the Staffing Manager position is a human resources position, which requires a minimum of seven years experience in "recruitment and employment services, including prior supervisory experience." [33] And, the Defendant claims that it hired Powell based on her "over twenty years of experience in the human resources field," and certification as a "Professional in Human Resources."

The Plaintiff does not offer any evidence to suggest that she was, at a minimum, equally qualified for the position. The Plaintiff also does not offer any evidence to dispute Jean Powell's qualifications. Thus, based on the record, the evidence is insufficient to raise any genuine issue of fact as to whether the Plaintiff was equally or more qualified than Jean Powell, or as to whether the Defendant's stated reasons for promoting Powell instead of the Plaintiff are pretextual. Accordingly, the Defendant's motion for summary judgment is due to be granted as to this claim.

### f. *Compensation Manager*

The Plaintiff also alleges that she was denied the Compensation Manager position because of her race. The Defendant contends, however, that it hired Courtney Sherwin to fill the position instead of the Plaintiff because Sherwin was more qualified than the Plaintiff.

---

**29.** Doc. 27, Ex. 1.

**30.** Doc. 38.

**31.** Doc. 34.

**32.** *Fulton County,* 207 F.3d at 1339.

**33.** Doc. 31.

Specifically, the Defendant claims that the Compensation Manager position is a human resources position, which requires a minimum of six years experience in compensation and knowledge of federal and state employment issues.[34] And, the Defendant claims that it hired Sherwin based on her "over six years of experience as Assistant Manager of Compensation and Compensation Analyst prior to joining RTI and [as a] Certified Compensation Professional and a member of the Society for Human Resources Management." [35]

Once again, the Plaintiff does not offer any evidence to suggest that she was, at a minimum, equally qualified for the position. The Plaintiff also does not offer any evidence to dispute Sherwin's qualifications. Thus, based on the record, the evidence is insufficient to raise any genuine issue of fact as to whether the Plaintiff was equally or more qualified than Sherwin, or as to whether the Defendant's stated reasons for promoting Sherwin instead of the Plaintiff are pretextual. Accordingly, the Defendant's motion for summary judgment is due to be granted as to this claim.

### 2. Hostile Work Environment

■ The Plaintiff alleges that she endured a hostile work environment because she was shunned and alienated by her coworkers.

In *Rojas v. Florida*,[36] the Eleventh Circuit held that, "[t]o establish that a workplace constitutes a 'hostile work environment,' a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' [37] And, the Court held that the factors to consider are "the frequency and severity of the conduct, whether it is physically threatening or humiliating, and to what degree it reasonably interferes with the plaintiff's job performance." [38]

The Plaintiff alleges that she was shunned and alienated by her coworkers. However, a review of the record reveals that the Plaintiff has not created an issue of fact as to whether she endured a "hostile work environment," as defined by the Eleventh Circuit. Specifically, the Plaintiff's proof is deficient in two respects. First, it is doubtful that the shunning and alienation alleged by the Plaintiff would rise to the level that is necessary to show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was so sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment.[39] Second, and more importantly, the record reveals that the alleged shunning and alienation was not overtly racially charged, and that the Plaintiff's evidence is insufficient to raise an issue of fact as to whether the shunning and alienation was motivated by racial animus.[40]

Accordingly, upon due consideration, the Defendant's motion for summary judgment is due to be granted.

### 3. Retaliation

#### a. Defendant's Refusal to Recognize the Plaintiff as an Employee

■ The Plaintiff alleges that insofar as the Defendant failed to recognize her as an

---

34. Doc. 31.

35. Doc. 27, 31.

36. 285 F.3d 1339 (11th Cir.2002).

37. *Id.* at 1344.

38. *Id.*

39. *Id.*

40. Doc. 28, Deposition of McMillan, 286–87.

employee and ceased contributing to her salary as of August, 2000, it retaliated against her in violation of Title VII.

The record reflects that during the course of her employment with the Defendant, the Plaintiff was an Administrative Assistant, and subsequently an Administrative Executive, to Nancy Holland. The record also reflects that until May, 2000, Nancy Holland served as the Chief Executive Officer for the University of Florida Tissue Bank, Inc., and as the Vice President of Donor Services for the Defendant. The Defendant concedes that it compensated the Plaintiff's salary, in part, until August, 2000. And, the record further reflects that the Plaintiff understood that her salary was paid, in part, by the Defendant, and by the Tissue Bank.[41]

In May 2000, Nancy Holland resigned her position as the Chief Executive of the Tissue Bank, and Larry Hopkins filled the position. At that time, although Nancy Holland had resigned, the terms and conditions of the Plaintiffs employment were unaffected. The Plaintiff continued to be employed, and she continued to receive her annual salary of $40,000. In fact, in June, 2000, the Plaintiff received a pay increase to an annual salary of $44,000.[42] Then, in August, 2000, the Plaintiff declined to follow up with the Defendant's offer to pursue a position working with Larry Hopkins, and to further pursue improving her qualifications for positions within the Defendant's company.[43]

Subsequently, in August, 2000, the Plaintiff began a new position with the University of Florida Tissue Bank, Inc., as a Community Project Coordinator.[44] The Plaintiff's "compensation and benefits" re-mained the same; thus, the Plaintiff continued to receive her annual salary of $44,000.[45] However, at the commencement of her new position, the Plaintiff no longer received part of her compensation or benefits from the Defendant.[46] On September 18, 2000, the Plaintiff filed her Charge of Discrimination.

The Plaintiff now contends that the Defendant retaliated against her by no longer contributing to her salary or recognizing her as one of its employees. However, in order to survive the Defendant's motion for summary judgment, the Plaintiff must demonstrate not only that she suffered an adverse employment action, but that there is some causal relationship between the Plaintiff's protected activity and the Defendant's action.[47]

Although the Defendant terminated its employment relationship with the Plaintiff, in light of the unique relationship between the Defendant, the Tissue Bank, and the Plaintiff, the Court concludes that the Plaintiff has not suffered an actionable adverse employment action. The Plaintiff's employment was not substantively or tangibly affected by the Defendant's severance. In fact, the Plaintiff continued to be employed by the Tissue Bank, and continued to receive the same compensation and benefits.

Further, even if the severance constitutes adverse employment action, the Plaintiff cannot satisfy the "casual relationship" prong of her prima facie case. Specifically, the Eleventh Circuit has held that in order to meet the causal link requirement, "[t]he plaintiff must at least establish that the employer was actually

---

**41.** Doc. 28, Deposition of McMillan.

**42.** Doc. 28, Deposition of McMillan, 298.

**43.** *Id.* at 288–90.

**44.** *Id.* at 284–85.

**45.** *Id. See also* Doc. 34.

**46.** Doc. 28, Deposition of McMillan, 297.

**47.** *Holifield,* 115 F.3d at 1566.

aware of the protected expression at the time the employer took adverse employment action against the plaintiff."[48] In this action, the Defendant terminated its employment relationship with the Plaintiff before she engaged in her statutorily protected expression. That is, the Defendant no longer contributed to the Plaintiff's salary as of August, 2000, but the Plaintiff did not file her Charge of Discrimination until September 18, 2000.

Accordingly, because the Plaintiff has failed to establish her prima facie case as to this claim, the Defendant's motion for summary judgment is due to be granted.

### b. *Salary Freeze*

The Plaintiff contends that as of October, 2000, her salary was "frozen" in retaliation for her complaints about the alleged discrimination. However, as of October, 2000, the Plaintiff was solely employed by the University of Florida Tissue Bank, Inc., and the decision to freeze the Plaintiff's salary was made solely by the Tissue Bank.[49]

The University of Florida Tissue Bank, Inc., was dismissed from the action with prejudice (Doc. 11), based on the parties' Joint Motion and Stipulation for Dismissal (Doc. 10). Accordingly, because the salary freeze claim applies solely to the actions of the Tissue Bank, and not to the Defendant, the Defendant's motion for summary judgement is due to be granted as to this claim.

### c. *Alienation by Coworkers*

The Plaintiff further alleges (as a separate assertion, apart from her "hostile work environment" claim, discussion *supra)* that she was "shunned" and "alienated" by her coworkers. The Defendant argues, however, that such "run-ins" with coworkers do not constitute adverse employment action sufficient to satisfy Title VII.

In order to demonstrate "adverse employment action," the Plaintiff must show "a *serious and material* change in the terms, conditions, or privileges of employment."[50] Throughout the course of her employment, however, the Plaintiff has not only never received a demotion, nor suffered any diminution in pay, but rather, the Plaintiff has received several promotions and reassignments, and salary increases. In addition, several courts have held that being ostracized by one's coworkers does not rise to the level of adverse employment action.[51] In fact, the Eleventh Circuit has stated that "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."[52] And, the Court has stated that "Title VII simply does not extend to everything that makes an employee unhappy."[53]

Accordingly, because the Plaintiff has failed to demonstrate that she has suffered any employment action that has seriously or materially affected the terms or conditions of her employment, the Defendant's motion for summary judgment is due to be granted. Further, insofar as the Plaintiff's allegations involve acts by her coworkers after August, 2000, the Defendant's motion

---

**48.** *Id.*

**49.** Doc. 28, Deposition of McMillan, 284–85. In fact, the Plaintiff was solely employed by the Tissue Bank as of August, 2000. *Id.* at 297.

**50.** *Davis v. Town of Lake Park,* 245 F.3d 1232, 1238 (11th Cir.2001).

**51.** *See Gagnon v. Sprint Corp.,* 284 F.3d 839, 850 (8th Cir.2002) (stating that ostracism and rudeness by coworkers do not rise to the level of an adverse employment action).

**52.** *Davis,* 245 F.3d at 1239.

**53.** *Id.* at 1242.

is due to be granted because the Plaintiff was no longer employed by the Defendant.

## 42 U.S.C. § 1981

As a parallel remedy to her Title VII claims, the Plaintiff seeks relief under 42 U.S.C. § 1981. The Eleventh Circuit has held that both Title VII and 42 U.S.C. § 1981 require the same elements of proof and use the same analytical framework.[54] Accordingly, because the Plaintiff has failed to establish her prima facie case under Title VII, the Plaintiffs claim under 42 U.S.C. § 1981 fails as well. Thus, the Defendant's motion for summary judgment is due to be granted as to this claim.

### Florida's Whistleblower Act [55]

The Plaintiff alleges that the Defendant "froze" her salary, and thus her advancement opportunities, in violation of Florida's Whistleblower Act.[56] However, the Plaintiff concedes that her salary was "frozen" by the University of Florida Tissue Bank, Inc., and not the Defendant.[57] In fact, at the time the Plaintiff's salary and advancement opportunities were "frozen," the Defendant was no longer an employer of the Plaintiff.[58] Accordingly, the Defendant's motion for summary judgment is due to be granted as to this claim.[59]

### Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) the Defendant's Motion for Summary Judgment (Doc. 27) is GRANTED in all respects;

(2) the Defendant's "Motion to Strike Portions of Plaintiff's Response to RTI's Motion for Summary Judgment" (Doc. 35) is DENIED as moot;

(3) the Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff with costs to be assessed according to law; and,

(4) the Clerk is further directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

---

54. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998); *Fulton County,* 207 F.3d at 1314 n. 6.

55. Fla. Stat. § 448.101 *et seq.*

56. Doc. 1 (alleging that "the Defendant violated Florida's Whistle Blower Act by freezing the Plaintiff's salary and advancement opportunities.").

57. Doc. 28, Deposition of McMillan, 285.

58. The Plaintiff was solely employed by the Tissue Bank as of August 2000. *Id.* at 297.

59. In addition, because the analysis used in Title VII retaliation cases is applied to Florida's Whistleblower Act, *Sierminski v. Transouth Financial Corp.,* 216 F.3d 945, 950–51 (11th Cir.2000), and because the Plaintiff has failed to state a claim under Title VII, the Defendant's motion for summary judgment is due to be granted.