[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2002
THOMAS K. KAHN
CLERK

----------------------------------------
No. 01-11070
----------------------------------------
D. C. Docket No. 99-02875 CV-SH

NANCY ROJAS,

                                        Plaintiff-Appellant,

        versus

STATE OF FLORIDA,
Dept. of Business & Professional
Regulations Pari-Mutual,

                                        Defendant-Appellee.


----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------

**(March 22, 2002)**


Before EDMONDSON and CARNES, Circuit Judges, and MUSGRAVE*, Judge.

_____

* Honorable R. Kenton Musgrave, Judge, U.S. Court of International Trade, sitting by designation.

PER CURIAM:

Appellant Nancy Rojas filed a multi-count lawsuit against the state of Florida alleging (among other things) various violations of Title VII: discriminatory discharge on the basis of sex, hostile work environment, and retaliation for complaining about discriminatory treatment and sex-based pay disparities.[1]  The district court granted Florida's motion for summary judgment. We affirm.

BACKGROUND

Rojas was hired by the Florida Department of Business and Professional Regulation's Pari-Mutuel division in November 1993.  The department oversees and regulates greyhound racing in Florida. She was hired as a Veterinary Assistant and was promoted to Chief Veterinary Assistant in 1994.  When Rojas was first hired, the position of Chief Inspector -- Rojas's immediate supervisor -- was held by Elizabeth Landon Lane.  In August 1996, Lane was replaced by Enrique Beguiristain.

---

[1]Rojas also brought a Title VII wage discrimination claim.  Although the district court also granted summary judgment to Florida on this question, Rojas does not challenge that determination in this appeal.

Veterinary Assistants and the Chief Veterinary Assistant are responsible for testing the greyhounds after their races. Their jobs consist chiefly of taking urine samples from the dogs, preparing those samples for shipment to a testing lab, and completing different forms. The Chief Veterinary Assistant has supervisory responsibilities over this process.

Until Beguiristain became Chief Inspector, Rojas's supervisors expressed no major problems with Rojas's work. Lane testified that Rojas's work was "exemplary" and that Rojas was one of the best employees she had ever had. There are, however, some indicators of problems even during this time: missed work dates, tardiness, and problems with filling out the forms for sample testing and mailing the samples.

Beguiristain was not satisfied with Rojas's work. After he came on, a memo was sent to all Veterinary Assistants and Chief Veterinary Assistants about the importance of following the proper policies for reporting to and from work and for tardiness and absences. Several memoranda from Beguiristain to his supervisors report Rojas's purported failure to comply with these policies. Rojas does not contest that she was absent or tardy on many occasions between the time Beguiristain became Chief Inspector and the time she was fired. She does assert that Beguiristain assured her that the tardiness and absences were not considered

serious problems. The record contains evidence indicating other unsatisfactory performance on Rojas's part. A letter from a Division Judge reports Rojas's failure to follow proper procedures for taking and recording samples. In addition, many reports from the testing lab indicate problems with the samples and the accompanying forms.

## DISCUSSION

A district court's grant of summary judgment is reviewed de novo. See Witter v. Delta Airlines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Id. (citations and quotations omitted).

I.  Retaliation and Discriminatory Discharge

Rojas claims that she was fired from her position as Chief Veterinary Assistant because of her sex and in retaliation for complaining about a sex-based disparity in pay.  Because Rojas has presented only circumstantial evidence of discrimination, we will analyze her claims under the familiar McDonnell Douglas framework.[2]  See McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  We will assume, without deciding, that Rojas can establish a prima facie case of unlawful discrimination and retaliation.  Once the prima facie case is established, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its act.  See id. at 1824.  Florida has offered several  reasons for firing Rojas: poor work performance, failure to follow department procedures, tardiness, and turning over her work as supervisor to subordinates.

Because Florida has met its burden of presenting a legitimate, nondiscriminatory reason for its act, Rojas bears the burden of showing that the

---

[2]Rojas's claim that this case is a direct evidence case is without merit.  "Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption.  As our precedent illustrates, direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor."  Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (citations and quotations omitted).

reasons offered were merely pretext. See id. at 1825. Rojas asserts that she is in fact a good employee and that Beguiristain fabricated evidence indicating that she was not a good employee to conceal his discriminatory motive.

In analyzing claims like Rojas's, we must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of Florida's conclusion that Rojas was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether Florida's proffered reasons were "a coverup for a . . . discriminatory decision." McDonnell Douglas, 93 S. Ct. at 1826. "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).

Rojas's evidence of pretext is insufficient to allow her to take her case to a jury. Rojas only presents one piece of evidence that is arguably persuasive in establishing pretext: a comment made by Beguiristain to Lane -- not to Rojas or about Rojas -- that Lane did not deserve her job (a higher-ranking and different job

6

than the job Rojas held) because Lane was a woman.[3]  Remarks such as this one --

isolated and unrelated to the challenged employment decision -- are not direct

evidence of discrimination.  See Schoenfeld, 168 F.3d at 1266.  We have said,

however, that such comments can *contribute* to a circumstantial case for pretext.

In Ross v. Rhodes Furniture, Inc., 146 F.3d 1286 (1998), we determined that

potentially discriminatory comments that were not directly related to the

employment decision could contribute to a circumstantial showing of

discriminatory intent.  See id. at 1291.  The facts of Ross, however, are clearly

distinguishable.  In Ross, fairly strong additional evidence supported a finding of

pretext (specifically, that the supervisor who had fired plaintiff had been engaged

in the same activity for which plaintiff was fired).  But no such additional evidence

exists here.  The Ross court, in fact, explicitly noted that the evidence relating to

the discriminatory comments had to be "read in conjunction with the entire record"

and "considered together with" the other evidence in the case.  See id. at 1291-92.

Because Beguiristain's alleged comment was (looking at the admissible evidence

---

[3]Rojas also attempts to present testimony that a coworker, Curtis Harris, told Rojas that Beguiristain told Harris that Harris did not have to listen to Rojas because she was a woman.  This testimony, however, is inadmissible hearsay.  See, e.g. Zaben v. Air Prods. and Chems., Inc., 129 F.3d 1453, 1455-57 (11th Cir. 1997) (comments by low-level supervisors repeating management's discriminatory comments are inadmissible hearsay).

before the district court) an isolated comment, unrelated to the decision to fire Rojas, it, alone, is insufficient to establish a material fact on pretext.

Rojas has also presented evidence that her supervisors before Beguiristain praised her work: Elizabeth Landon Lane testified in her deposition that Rojas had been one of the best Chief Veterinary Assistants she had ever had. These differences in the evaluation of Rojas's performance do not establish a genuine issue on pretext. Different supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important. Cf. Jones v. Gerwens, 874 F.2d 1534, 1542 n.15 (11th Cir. 1989). Nothing in the record indicates that Beguiristain singled out Rojas for increased enforcement of departmental regulations. On the contrary, Beguiristain circulated a memo to all of his subordinates about the importance of following the department's procedures. In addition, Bryan Lawrence -- a man -- was fired from his position as Veterinary Assistant for his failure to follow workplace procedures.

In Damon, we did consider it to be circumstantial evidence of discrimination where employees with good employment histories suddenly began receiving poor evaluations when a new supervisor came on. See Damon, 196 F.3d at 1361. In that case, however, the factual basis for the poor evaluation was in dispute. See id. at 1363 (defense that employee was fired for violation of work rules "is arguably

pretextual when a plaintiff submits evidence . . . that she did not violate the cited work rule").

In this case, there is no doubt that problems did, in fact, exist with Rojas's work. Objective evidence exists, from sources besides Beguiristain, supporting Florida's proffered reasons: the discrepancy reports and other complaints from the testing lab, and reports from other people employed by the department of Rojas failing to do her work properly. Moreover, although Rojas contends that she had valid excuses for her absences and tardiness, she does not dispute that she was absent or tardy at least six times between January 1997 and her termination in August 1997.

Even when good reasons -- the factual bases for which are not rebutted -- are proffered by an employer, a plaintiff can, in some circumstances, still show discrimination. To do so, however, a plaintiff must show that male employees with employment histories like the plaintiff's were not subject to the same adverse employment action as the plaintiff. See Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists when similarly situated workers are treated differently even though they have committed

9

similar acts."). Rojas, however, can point to no man -- in a similar position and with a similar employment history -- who was treated better than she was.[4]

Given the factual record in this case, we are being urged to do nothing more than second-guess a business decision made by Florida. This kind of inquiry -- whether a business decision is wise or nice or accurate -- is precluded by <u>Damon</u> and similar cases. <u>See</u> <u>supra</u>. Judges are responsible for drawing the lines on what evidence is sufficient to create an issue on pretext. In this case, the evidence shows that a new supervisor announced his intention to hold all employees responsible for following workplace rules and procedures. The evidence also shows that the plaintiff did, in fact, violate some of those rules and procedures. But, no evidence exists to show that similarly situated male and female workers were treated differently: workers of both sexes were subsequently fired for failure to follow the procedures, and Rojas can identify no man with a similar work history who was not fired. In such a situation, no basis for pretext exists.

---

[4] Rojas also claims that Beguiristain failed to follow Florida's guidelines for reporting her poor work performance and violation of workplace rules and for notifying her of the deficiencies in her work. The evidence, however, also shows that Beguiristain did not follow proper reprimand procedures for Bryan Lawrence. To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner. <u>Cf.</u> <u>Brown v. American Honda Motor Co.</u>, 939 F.2d 946, 952 (11th Cir. 1991) ("It is difficult to hold that a practice which affects . . . all races in the same manner is actually designed to conceal a racially discriminatory motive."). Rojas cannot make such a showing.

Because Rojas has failed to create a genuine issue of material fact on the question of whether Florida's proffered reasons for her termination were pretext, the district court's grant of summary judgment on Rojas's retaliation and sex discrimination claims must be affirmed.

II. Hostile Environment

We see no merit to Rojas's claims of hostile environment. To establish that a workplace constitutes a "hostile work environment," a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993) (citations and quotation marks omitted). The factors to consider are the frequency and severity of the conduct, whether it is physically threatening or humiliating, and to what degree it reasonably interferes with the plaintiff's job performance. See Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997).

Rojas argues that she was "treated coolly and made to feel unwelcome" and that Curtis Harris got away with some workplace infractions which were different

11

from her infractions.  The evidence presented by Rojas does not show enough to create a genuine issue of material fact on whether the <u>Harris</u> standard is satisfied.  As such, summary judgment for Florida was properly granted.

The judgment of the district court is hereby affirmed.


AFFIRMED.