[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 8, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16328
Non-Argument Calendar

_____

D. C. Docket No. 03-00503-CV-VEH-NE

MARIO WASHINGTON,

Plaintiff-Appellant,

versus

THE KROGER COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 8, 2007)**

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

This is a civil rights action, brought under Title VII of the Civil Rights Act

of 1964 (Title VII), 42 U.S.C. §§ 2000e-2, 2000e-3, and 42 U.S.C. § 1981, by a former employee of The Kroger Company, Mario Washington, an African American. Washington worked at Kroger Store 508 in Huntsville, Alabama, from May 3, 2000 to August 21, 2002. In his complaint against Kroger, Washington presents claims of racial discrimination, retaliation, and constructive discharge based on the conduct of a co-worker, Randy Dean, in Store 508's meat department between July and September 2001. He alleges that Dean harassed him by (1) threatening to duct tape his wife and have sex with her while Dean made him watch; (2) calling him "motherfucker;" (3) verbally abusing and belittling him by calling him names such as "boy" and telling him he was "nothing;" (4) telling him he would chop him up in the meat grinder; (5) holding a knife in the air, pointing it at him; and (6) removing his, Washington's, jacket from the coat rack and threatening to take it. He alleges that on September 1, 2001, Dean hung a plastic figurine, meant to represent him, with a rope. He alleges that despite his complaints about Dean's conduct, Kroger took no action; instead, it demoted him to a lower paying position, moving him from the meat department to the front of the store to bag groceries and collect carts. Kroger also cut his work hours.

Kroger asserts that it had no knowledge of any harassing conduct by Dean prior to the September 1, 2001 incident because Washington never reported any of

2

the prior incidents to management. Washington alleges that he discussed them with his supervisor in the meat department, Gary Hood, who is not considered by Kroger to be part of the management team. On September 1, 2001, upon seeing the figurine, Washington complained to the assistant manager at the store, Rick Shotts, who immediately removed it. Shotts stated in his deposition testimony that he had a meeting the same day with Dean, Washington, and a union steward during which he told Dean that his actions were "unacceptable." Washington reported no further harassment by Dean after that meeting and twenty days later Dean left Kroger for a medical leave and never returned.

Following discovery, Kroger moved the district court for summary judgment on all of Washington's claims. The court granted its motion. Washington now appeals, contending that the presence of material issues precluded the court from granting summary judgment. He submits that a jury could reasonably find that discriminatory intimidation, ridicule, and insult pervaded his work environment at Kroger. He points in particular to the hanging of the figurine – that it communicated racial animus and fear – and the use of the term "boy," as indicative of racial animus. He says that Kroger offered no evidence to show that such conduct did not occur. To the contrary, Kroger had actual knowledge of the harassment as a result of his reports to Gary Hood, supervisor of the meat

3

department, and although Kroger asserted that Hood was not the proper person to receive such complaints because he was not a member of management, the company's policy directed employees to report harassment to their immediate supervisor. He submits that a jury could find that Hood was his supervisor, and thus that Kroger had notice of his complaints prior to the September 1, 2001, incident.

We review "a grant of summary judgment de novo, using the same legal standard as the district court." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1184 (11th Cir. 1997). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S.Ct. at 1356. The non-moving party must make a sufficient showing on each essential element of the case for which he has

4

the burden of proof. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

Title VII provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 prohibits intentional racial discrimination in the making and enforcement of private contracts, including employment contracts. 42 U.S.C. § 1981. Both Title VII and § 1981 have the same requirements of proof and present the same analytical framework. Standard v. A.B.E.L. Services, 161 F.3d 1318, 1330 (11th Cir. 1998). As a result, we apply cases from both bodies of law interchangeably.

"A hostile environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted). To establish a hostile work environment claim, a plaintiff must show: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment has been based on a protected characteristic, such as (in the instant

5

case) race; (4) the harassment is sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) the employer is responsible for such environment under a theory of vicarious liability or a theory of direct liability. Id. The requirement that the harassment be severe or pervasive contains an objective and subjective component. Id. at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." Id. (internal quotations omitted).

In evaluating the objective severity of the harassment, we consider, among other things, (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonable interferes with the employee's job performance. Miller, 277 F.3d at 1276. "Although we examine the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute [racial] harassment, the statements and conduct must be of a [racial] nature . . . before they are considered in determining whether the severe or pervasive requirement is met." Gupta v. Florida Board of Regents, 212 F.3d 571, 583 (11th Cir. 2000). "Innocuous

6

statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted." Id. Additionally, teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. Mendoza v. Borders, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). The word "boy" standing alone may be evidence of racial animus. Ash v. Tyson Foods, Inc., 546 U.S. 454, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006).

We are satisfied that the district court committed no error in granting Kroger summary judgment on Washington's hostile environment claim. The court appropriately considered only the September 1, 2001 incident and Dean's "boy" comments because the other conduct Washington complained of was devoid of any racial content. While the hanging of the figurine may have been severe conduct that was physically threatening, Kroger management took prompt remedial action by both removing the offending object and censuring Dean. Washington also alleges that Dean called him "boy" on multiple occasions. The parties disagree as to Kroger's knowledge of this behavior by Dean; however, Washington does not allege that anyone else at Kroger used racially derogatory speech towards him. Furthermore the record reflects that Washington only worked with Dean for two to three months, in the summer of 2001, of the approximately two years that he was

7

employed at Kroger. These comments, though demeaning, were not severe or extreme. Nor were they so pervasive that they altered Washington's conditions of employment because Dean was one employee, out of the presumably dozens that worked at the store, who made the comments over a relatively short period of time.

Next, regarding his claim for retaliation, Washington asserts that the district court erred in concluding that he suffered no adverse employment action and, moreover, failed to prove causation. He contends that temporal proximity alone is not dispositive of the issue of causation in this case because the decision makers had prior knowledge of his complaints and his disparate treatment. He asserts that Kroger's reasons for transferring him to a different department were pretextual as evidenced by the fact that a clerk hired after him remained in the meat department.

We apply the analytical framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), where, as here, a Title VII plaintiff uses circumstantial evidence to prove his case. Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000). Under the McDonnell Douglas framework, when circumstantial evidence is used, a plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The burden then shifts to the employer to state a

8

legitimate, nondiscriminatory reason for the employment decision. Id. at 802-803, S.Ct. at 1824-1825. If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was pretextual. Id. at 804, S.Ct. at 1825.

Title VII makes it unlawful for an employee to discriminate against an employee in retaliation for opposing a practice made an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a). "To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [his] protest, so long as [he] had a reasonable good faith belief that the discrimination existed." Gupta, 212 F.3d at 586. To establish a prima facie case of retaliation, a plaintiff must prove that (1) he participated in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. Id. at 587. While temporal proximity between the protected activity and the adverse employment action may be sufficient to create an inference of causation, "gaps of time, standing alone, do not preclude a plaintiff from producing enough evidence for a reasonable jury to conclude that protected speech was a substantial factor in the [adverse employment decision]." See Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000). "We are not in the business of adjudging whether

9

employment decisions are prudent and fair." Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). "Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Id.

We find no error in the court's summary disposition of Washington's retaliation claim because Washington failed to establish causation or create a genuine issue of fact as to whether Kroger's proffered reasons for his transfer were pretextual. Although the court concluded that he suffered an adverse employment action, a causation inference could not reasonably be drawn because (1) five months passed between his complaints and his transfer, (2) Kroger did not treat him differently during that time period, and (3) he did not experience any further harassment.

Even if Washington established causation, summary judgment was still appropriate because he failed to adduce sufficient evidence that Kroger's proffered reasons for his transfer were pretextual. The record reflects that Kroger transferred him because of the combined effect of its reduction in hours made available to workers, which occurred because of a company reorganization, and his limited availability due to his school schedule. Additionally, although Kroger allowed a less-senior employee to continue working in the meat department, there was no indication that the employee had limitations on his availability similar to

Washington's.

Finally, Washington asserts that Kroger's actions of taking an employee such as himself, who had won awards for customer service and hoped to pursue a management career, and putting him in a job where he had to bag groceries and collect shopping carts satisfied the criteria for a constructive discharge claim. He submits that resignation resulted from Kroger's failure to answer his complaints of racial harassment and its act of transferring him to a less prestigious position.

To show constructive discharge, Washington had to demonstrate that his working conditions were so intolerable that a reasonable person in his position would be compelled to resign. Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752, 754 (11th Cir. 1997). Kroger was entitled to summary judgment on the constructive discharge claim because Washington failed to create a material issue of fact that his working conditions were so intolerable that a reasonable person would have been compelled to resign. The harassment he experienced only occurred between July and September 2001. Kroger addressed his complaints following the September 2001 incident, and he continued to work with Dean, the sole person who allegedly harassed him, for only 20 more days. Finally, Kroger had a legitimate reason for transferring him and, in any event, his job title as store clerk remained the same.

11

We find no basis for disturbing the district court's judgment. It is accordingly

AFFIRMED.