[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14944
Non-Argument Calendar

_____

D. C. Docket No. 06-00116-CV-J-20-MMH

NICHOLAS V. CICCONE,

Plaintiff-Appellant,

versus

J. SAPP,
R. SOLORZANO,
R. FELTNER,
D. HALL,
M. DELACERNA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 28, 2007)**

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Nicholas V. Ciccone, a prisoner proceeding pro se, appeals the grant of summary judgment in favor of prison officials in his 42 U.S.C. § 1983 action. On appeal, Ciccone argues that, after his initial treatment for scabies, the prison officials acted with deliberate indifference when they failed to re-treat his condition for 12 weeks. For the reasons set forth more fully below, we affirm.

According to the evidence in the record, scabies involves a sub-dural infestation of mites and causes intense itching to the point where the scratching results in scabs and sores. The prescribed scabies treatment is a cream which kills the mites. Dr. Hall, a staff physician at the prison, diagnosed Ciccone with scabies on March 3, 2005, and prescribed Permethrin cream to treat the disease. On March 17, Dr. Hall informed Ciccone that he could not be re-treated so soon for scabies, stating that Ciccone would have to wait two months because the Permethrin cream was toxic and could kill him. On May 26, 2005, Dr. Hall again diagnosed Ciccone with scabies, re-prescribing Permethrin. During the period between his two Permethrin treatments, Ciccone's medical records reflect that he returned to the medical unit on March 5, March 13, March 15, March 17, April 15, April 27, May 6, May 8, May 19, and May 22. During these visits, he was seen by Nurse Zak, Nurse Hudgins,[1] Dr. Hall, or other medical personnel who were not

---

[1] The district court dismissed Hudgins pursuant to Fed.R.Civ.P. 25(a).

named as defendants.  These visits involved either continued complaints following his initial treatment, treatment of a prior medical condition which was triggered by the scabies, or both.  Ciccone described the effect of scabies as causing: (1) a re-occurrence of a medical condition, which had been in remission; (2) the need for mental health treatment due to a "state of confusion"; (3) immense pain; (4) an inability to sleep at night and crying due to the pain; and (5) scabs and sores all over his body.

We review the district court's ruling on summary judgment de novo.  Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002).  The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  If the non-moving party bears the ultimate burden of proof regarding the claim at issue in the motion, that party, in response to the motion, must go beyond the pleadings and establish, through competent evidence, that there truly is a genuine, material issue to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most

3

favorable to the non-moving party." Rojas, 285 F.3d at 1341-42 (citation and quotation marks omitted).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Deliberate indifference contains both an objective and subjective component. Id. A plaintiff first must demonstrate an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citation and quotation marks omitted). Further, the medical need must be one that poses a substantial risk of serious harm if left unattended. Id.

Once a serious medical need is shown, a plaintiff must satisfy the subjective inquiry, establishing that "the prison official acted with deliberate indifference to that need." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (citation and quotation marks omitted). Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Deliberate

4

indifference requires "(1) subjective knowledge of a risk of serious harm;

(2) disregard of that risk; (3) by conduct that is more than mere negligence."

Farrow, 320 F.3d at 1245 (citation and quotation marks omitted).

> Our cases have given substance to [the] distinction between "deliberate indifference" and mere negligence, explicating categories of action or inaction that may constitute deliberate indifference. We have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. We have also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."

McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations omitted)

(second alteration in original).

However, a "simple difference in medical opinion" does not constitute

deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

"[T]he question of whether governmental actors should have employed additional

diagnostic techniques or forms of treatment 'is a classic example of a matter for

medical judgment' and therefore not an appropriate basis for grounding liability

under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted). "The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." Farrow, 320 F.3d at 1243 (citation and quotation marks omitted). In addition, "the official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'" Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (quoting Farmer, 511 U.S. at 844, 114 S.Ct. at 1982-83) (footnote omitted) (alteration in original).

The district court assumed, without deciding, that scabies was a serious medical need. When viewed in the light most favorable to Ciccone, the facts discussed above regarding the nature and treatment of scabies and its effect on Ciccone establish that scabies could be deemed objectively serious. Cf. Andujar v. Rodriguez, No. 05-17162, manuscript op. at 7 (11th Cir. May 15, 2007) (holding that a dog bite that caused more than superficial wounds, impaired walking, and left the plaintiff crying in pain could be deemed objectively serious).

We now turn to whether the record evidence creates a genuine issue of material fact as to whether the defendants acted with deliberate indifference. Ciccone's primary argument is that he should have been re-treated with Permethrin after 14 days instead of 12 weeks. He further contends that this case does not turn

6

on an issue of a difference of opinion over matters of medical judgment, as he never expressed such an opinion; once he was diagnosed with scabies, medical judgment was rendered and the only remaining task was to provide treatment. In addition, Ciccone complains generally of delays and denials of medical care.

During the two months following his initial treatment on March 3, 2005, Nurse Zak saw Ciccone and prescribed hydrocortisone on March 5 and 13. Although Ciccone was not prescribed any medication during his March 15 visit with Nurse Hudgins, two days earlier he was given 10 unit doses of hydrocortisone and Hudgins advised him that he could sign up for sick call if medicine was needed before his doctor's appointment. Ciccone also saw Dr. Hall two weeks after the initial treatment. At this visit, Dr. Hall prescribed medication for post scabies treatment and Ciccone's prior condition, which had come out of remission. It is undisputed that Dr. Hall also told him that he could not be given Permethrin for another two months due to the toxicity of the medication. According to information in the Physicians' Desk Reference on Acticin, a brand name Permethrin cream, demonstrable living mites after 14 days indicate that re-treatment is necessary. Ciccone relies upon this statement as evidence that Dr. Hall was incorrect. However, Ciccone provides no evidence that refutes Dr. Hall's medical judgment that Permethrin cannot be prescribed more than once within a

7

two-month period.  Matters of medical judgment extend to whether the defendants should have provided additional forms of treatment.  See Adams, 61 F.3d at 1545; see also Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (stating, "[n]or does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's . . . course of treatment support a claim of cruel and unusual punishment").  The evidence shows that the defendants provided some treatment, but not the treatment Ciccone believes he should have received.  Because Ciccone only has shown a difference of medical opinion in the manner in which the defendants treated his condition during this two-month period, he has not raised a genuine issue of material fact regarding deliberate indifference.  See Adams, 61 F.3d at 1545; Harris, 941 F.2d at 1505.

Moreover, even if Dr. Hall was incorrect concerning the length of time that must elapse before re-treatment, at best, the evidence only permits the conclusion that Dr. Hall was negligent, which is insufficient for a claim of deliberate indifference.  See Farrow, 320 F.3d at 1243.  The Physicians' Desk Reference provides no indication that re-treatment with Permethrin cannot safely occur for a period of time.  Although demonstrable living mites after 14 days indicate that re-treatment is necessary, the only recorded visits with the defendants during this

8

period occurred within the first 14 days after treatment[2] and there is no evidence that living mites were detected between March 3 and May 26, 2005. Ciccone continued to experience itching. However, according to the Physicians' Desk Reference, itching could continue after treatment, and it is rarely a sign of treatment failure and is not an indication for re-treatment. In addition, because persistent itching is possible and rarely a sign of treatment failure, Nurse Zak did not act unreasonably in prescribing hydrocortisone within two weeks of Ciccone's initial treatment and, therefore, did not act with deliberate indifference. See Chandler, 379 F.3d at 1290.

We recognize, however, that once this initial two-month period elapsed, Ciccone was not re-treated with Permethrin until some time had passed. At Ciccone's request, Nurse Zak referred him to a doctor on May 8. Although Ciccone returned to the medical unit, he did not see a doctor until May 26, at which time he was promptly diagnosed with scabies and prescribed Permethrin. Ciccone was told that the delay was due to backlog. Even if: (1) Nurse Zak had subjective knowledge that Ciccone continued to suffer from scabies as a result of Ciccone's past diagnosis and continued complaints of itching and a rash; and

---

[2] Ciccone also claims that he made several unrecorded visits to the medical unit, during which the staff did "absolutely nothing." As Ciccone does not provide any evidence of who he saw during these visits or when the visits occurred, he has not raised a genuine issue of material fact as to whether any of the medical personnel acted with deliberate indifference.

(2) Dr. Dela-Cerna, another staff physician, and Dr. Hall and had such knowledge as a result of their review of Ciccone's medical records on May 23 and 24, respectively, after reviewing the record, we conclude that there is insufficient evidence to allow a finding that the delay in treatment was due to deliberate indifference.

Zak's actions of prescribing hydrocortisone and making a clinician referral, at best, are no more than negligent. See Farrow, 320 F.3d at 1245. Nor are they "so objectively inadequate that they satisfy Estelle's high standard." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000). Moreover, there is no evidence to show that the delay between Zak's May 8 clinician referral and the appointment was due to Zak's deliberate indifference. Nor is there any evidence that Zak, without the assistance of a doctor, could have prescribed Permethrin to Ciccone.

From the time the evidence would allow the conclusion that Drs. Hall and Dela-Cerna learned of Ciccone's condition, two and three days, respectively, elapsed prior to treatment. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1189 (11th Cir.1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666

10

(2002). "Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims." Harris v. Coweta County, 21 F.3d 388, 394 (11th Cir.1994). In this case, although Ciccone had access to medical personnel, he was unable to see a doctor as quickly as he would have liked. The only explanation for the delay offered in this case was backlog, and Ciccone has offered no evidence to the contrary. During the time Ciccone was waiting for his appointment, he had access to nurses, was provided hydrocortisone for his rash and medication for his prior condition, and was instructed to take a cool shower. Once he finally saw Dr. Hall, he was diagnosed with scabies and promptly prescribed the necessary treatment. Under these circumstances, the two and three day delays between the time Drs. Hall and Dela-Cerna learned of Ciccone's condition and his doctor's appointment does not raise a genuine issue of fact as to whether these defendants were deliberately indifferent.

We similarly conclude that Ciccone did not raise a genuine issue of material fact as to whether Warden Sapp, Chief Health Officer Solorzano, and Senior Health Administrator Feltner acted with deliberate indifference. These defendants responded to Ciccone's four grievances, filed between May 10 and May 26, 2005. Ciccone's May 10 grievance complained about being charged for his medical

11

treatment, not the quality of his care. Although Ciccone indicated his belief that he continued to suffer from scabies, he also stated that he had been to sick call and was "put over to see the doctor again." Because the grievance did not complain about inadequate care and indicated that Ciccone had received medical attention and would see the doctor, it does not raise a genuine issue of fact as to whether the defendants who reviewed the grievance acted with deliberate indifference by failing to take action to ensure that Ciccone received treatment. Ciccone's May 16 and 26 grievances related only to the assessment of a co-payment and likewise do not raise a genuine issue of material fact. On May 22, however, Ciccone requested proper treatment for his scabies, providing information about the history and present state of his condition, and stating that his appointment kept getting postponed due to backlog. Ciccone received treatment on May 26. On May 31, Solorzano and Sapp denied his grievance on the ground that Ciccone should have already seen a doctor. This response does not create a genuine issue of material fact as to deliberate indifference.

In light of the foregoing, we hold that Ciccone failed to raise a genuine issue of material fact as to whether the defendants acted with deliberate indifference. Accordingly, the district court is

**AFFIRMED.**

12