[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10549
Non-Argument Calendar

_____

D. C. Docket No. 06-02546-CV-ODE-1

GLENN L. BASS,

Plaintiff-Appellant,

versus

LOCKHEED MARTIN CORPORATION,
d.b.a. Lockheed Martin Aeronautics Company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 24, 2008)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Glenn Bass appeals the district court's grant of summary judgment to his former employer, Lockheed Martin Corp. ("Lockheed"), as to his complaint alleging wrongful termination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and retaliation for his use of family and medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1).  Because Bass fails to provide sufficient evidence showing that Lockheed's reduction in force ("RIF") was pretextual for an underlying discriminatory animus, or that the termination was retaliatory for taking FMLA leave, we affirm the district court.[1]

We review a district court's grant of summary judgment de novo.  *Rojas v. Florida*, 285 F.3d 1339, 1341 (11th Cir. 2002) (per curiam).  Summary judgment is proper under Fed. R. Civ. P. 56(c) when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  To survive a motion for summary judgment, the nonmoving party must

___

[1]The district court found that the ADA and ADEA discrimination claims were time-barred.  We have chosen, however, to address the merits of these claims, and find ample reason to affirm. *See United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (per curiam) ("[W]e may affirm for any reason supported by the record, even if not relied upon by the district court." (internal quotation marks omitted)).

show that there is a genuine issue of fact for trial. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). We view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Battle v. Board of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006) (per curiam).

## I.  ADA Discrimination

Bass alleges that Lockheed discriminated against him on the basis of his morbid obesity, obstructive sleep apnea, hypertension, and depression disabilities. The ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. 42 U.S.C. § 12112. We apply the law developed in Title VII, ADEA, and ADA cases interchangeably. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001).

Bass may avoid summary judgment in one of two ways. Bass may rely on the traditional framework and use direct evidence to create a triable issue on whether he was fired or treated less favorably because he was disabled. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (per curiam). "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Id.* (alterations and internal quotation marks omitted). Alternatively, Bass may use circumstantial evidence and rely on the

3

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) framework to create a triable issue. *Id*.

Despite Bass's contentions otherwise, he does not submit direct evidence of ADA discrimination. The alleged comments made by Peter Mutuku, one of Bass's supervisors, to Bass's mother does not tend to prove discrimination without inference or presumption. As explained by the district court, Mutuku was not the decisionmaker in this case. Bass's attempts to make Mutuku out to be the effective decisionmaker are based only on speculation.[2] *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Further, Mutuku's alleged comments, as reiterated by Bass's mother, are vague and are not a clear indication of discriminatory animus.[3]

---

[2]Bass attempts to link Mutuku to the decision maker, Mike Altomare, by saying that Altomare consulted with Mutuku and relied on Mutuku's previous performance evaluations. (Initial Brief at 19.) Bass submits no evidence, however, showing that Altomare relied upon Mutuku in this fashion or was otherwise involved in the termination of Bass. Indeed, Mutuku expressly denied being involved in Bass's termination. (R2-68, Tab H, Mutuku Decl. ¶¶6-7.)

[3]Before addressing the alleged comments, some context is necessary. Due to his obesity condition, Bass requested and was granted leave pursuant to Lockheed's FMLA Policy over the last several years of employment. In September 2003, Bass requested and was granted a one-year medical leave to participate in an inpatient weight loss study in New York. Bass used a combination of FMLA leave, vacation time, and unpaid personal business leave to cover the absence. Bass briefly returned to work in November 2004, but soon thereafter requested two additional months of leave for medical attention using a combination of vacation time and unpaid

As for circumstantial evidence, even if we assume a prima facie case, Bass fails to provide sufficient evidence showing that "the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). Lockheed submits that Bass was released as a result of a RIF. (Response Brief, at 8.) Lockheed laid off employees with the lowest "stack rankings" in certain job classifications. *Id*. Employees in selected job classifications were ranked on the following criteria: (1) whether the employee was adaptable or multi-disciplined; (2) the employee's communications skills; (3) the employee's quality of work; (4) the employee's productivity; (5) the employee's management skills

---

personal business leave (Bass was not eligible to take any additional FMLA leave). It was at this time that Mutuku allegedly said to Bass's mother on the phone that "in the past Lockheed went along with [Bass] and his health problems, but the company was not going to do that anymore and [Bass] would be fired." (Mrs. Bass Decl., R2-68, Tab A, Subtab 73.) In a subsequent phone call during the same month, Bass's mother discussed her son's inability to work due to severe depression, and Mutuku allegedly said that "he had done all that he could do for [Bass] and that [Bass] could not be helped anymore." *Id*. Lockheed granted Bass's request for a two-month leave, and Bass returned on January 17, 2005. Mutuku denied making the above comments, but stated that he did find Bass's history of unexcused tardies and absences, unrelated to FMLA leave, "frustrating" because they resulted in unfinished projects that needed to be reassigned. (Mutuku Decl., R2-68, Tab H, ¶ 16.). Bass does not contest that he had many unexcused tardies and absences unrelated to FMLA absences, or that his most recent two-month departure was not FMLA leave. Given that the alleged comments were made on the heel of Lockheed providing Bass with a one-year leave accomodation, which was followed by a two-month non-FMLA leave, the fact that Bass had a record of many unexcused tardies and absences, and the fact that the alleged comments are vague and do not point to any particular disability, we do not believe a reasonable jury could consider Mutuku's alleged comments as evidencing, without inference or presumption, an animus towards Bass's disabilities.

and technical leadership; (6) the employee's technical knowledge; (7) the employee's values and behaviors, including attendance, a "can do" attitude, interpersonal skills, and responsiveness; and (8) the difficulty of replacing the employee. *Id*. Bass was scored as a poor oral communicator, was slow to complete projects, lacked management skills, was easy to replace, and had many unexcused absences unrelated to FMLA absences. (Altomare Decl., R2-68, Tab F, ¶ 14.)

Bass must show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095. Bass must meet the proffered reason "head on and rebut it . . . [he] cannot succeed by simply quarreling with the wisdom of that reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).

Bass does not take issue with any of the low scores he received, or that he had the lowest score in his respective job classification. Instead, Bass relies on the alleged comments Mutuku made to Bass's mother, Lockheed's decision to not retain him for a different position, and that two non-disabled employees had received lay off notices but were ultimately rehired by the company. Mutuku's

6

alleged comments, described in more detail above, are not a convincing indication of discriminatory animus; such evidence, by itself, is an insufficient showing of pretext at this stage. Lockheed's decision to not rehire Bass is not compelling given Bass's low stack ranking scores—scores that Bass does not contest. Finally, Bass offers insufficient comparative data with respect to the two employees who were retained by Lockheed. For example, Bass does not detail their particular circumstances, their stack ranking scores, or the percentage of employees that were retained despite having received lay off notices. (Response Brief at 6.) On this record, Bass fails to provide sufficient evidence tending to show that Lockheed's proffered reason for termination was pretextual.[4]

## II. ADEA

The ADEA prohibits an employer from discriminating on the basis of age. 29 U.S.C. § 623(a). Bass submits that at the relevant time he was 48 years old and Walter Bell was 55 years old. Bass also asserts that he applied for fourteen other

---

[4]Bass also cites to statements from three Lockheed employees, two of which are from himself and Walter Bell (another employee that was laid off). Each employee states that in the past, when Lockheed laid off employees because of insufficient work, the engineers with the least amount of experience and qualifications were laid off. These statements are uncompelling. Bass submits no evidence of this being the first time Lockheed has used stack rankings for lay offs, or that the stack rankings were without merit. Further, Lockheed made clear that the instant RIF was not initiated as a consequence of insufficient work. Lockheed acknowledges that there was an abundance of work to be done. (Response Brief at 7.) Instead, the RIF was imposed by management as a result of budgetary constraints on a particular project.

7

positions internally, but was not hired for any of them. (Reply Brief at 6-7.) Again, even if we assume a prima facie case, the circumstantial evidence is simply insufficient to evidence a discriminatory animus or otherwise discredit the RIF imposed by Lockheed. This is especially true given that Bass does not dispute that a Lockheed employee fifteen years older than Bass continues to be employed in Bass's job classification. (Response Brief at 30.)

## III. *FMLA Retaliation*

Bass asserts that Lockheed retaliated against him for engaging in an activity protected by the FMLA; i.e., Lockheed terminated Bass for taking FMLA leave. To establish a prima facie case of FMLA retaliation, Bass must demonstrate that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Bass argues that the proximity in time between the protected conduct and the adverse action satisfies the causal connection. Bass last took FMLA leave in May 2004, approximately eleven months prior to receiving his lay off notification. We, like the district court, hold that this is insufficient to support the causal connection. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that a "three and one-half month temporal proximity is insufficient to create a jury

8

issue on causation."). Bass also argues that Mutuku's alleged comments to Bass's mother establish a causal connection. However, given the content of the alleged comments and the context in which they were made (see supra note 3), and given that there is no evidence linking Mutuku to the ultimate decision to terminate Bass, we must hold that Bass fails to establish a causal connection. Accordingly, we affirm.

**AFFIRMED.**