[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12824
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00738-CV-5-SLB

CAROL BIRDYSHAW,

Plaintiff-Appellant,

versus

DILLARD'S INC.,
d.b.a. Dillard's,
a/k/a/ Caster Knott Dry Goods Co, The,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 28, 2009)

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Carol Birdyshaw appeals from the district court's grant of summary judgment in favor of Dillard's Inc. on her two retaliation claims, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).[1] For the reasons set forth below, we affirm.

**I.**

In 2004, Birdyshaw filed an amended complaint against Dillard's, alleging violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ("ADEA"), and Alabama state law.

Birdyshaw's complaint generally alleged that she was a woman over 40 years old and had been employed as an area sales manager ("ASM") at a Dillard's department store in Huntsville, Alabama. She worked under both Mary Davis, the operations manager, and Steven Moretti, the store manager. Upon Moretti's arrival in October 2000, he became increasingly hostile to Birdyshaw and made derogatory remarks about her age and gender. In a November 25, 2000, meeting involving Birdyshaw, Davis, and Moretti, Moretti and Birdyshaw got in a work-related confrontation. Due to the anxiety from the confrontation with Moretti,

---

[1] On appeal, Birdyshaw has abandoned any argument in connection with the other claims alleged in her complaint. See Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 n.4 (11th Cir. 2008).

Birdyshaw's doctor placed her on medical leave. Following the incident, Birdyshaw complained to Dillard's management about Moretti's behavior. While Birdyshaw was out on medical leave, Moretti terminated her salary benefits, but after several weeks, Dillard's reinstated those benefits. On February 16, 2001, Birdyshaw filed a charge of discrimination against Dillard's with the Equal Employment Opportunity Commission ("EEOC").

Birdyshaw alleged ten causes of actions, but only her two retaliation claims are at issue in this appeal. In the first retaliation claim, Birdyshaw alleged that, as a result of her complaint about Moretti, Dillard's retaliated against her by suspending her salary benefits while she was on medical leave. In her second retaliation claim, Birdyshaw alleged that Dillard's retaliated against her by failing to grant her a transfer to a different store, which ultimately led to her termination.

Dillard's filed a motion for summary judgment, arguing Birdyshaw could not show an adverse employment action and that it had legitimate nondiscriminatory reasons for suspending her salary and not granting her a transfer. With respect to the transfer request, Dillard's argued that, as a matter of policy, it did not transfer employees who were on leave and, because Birdyshaw requested the transfer to take effect only after she was permitted to return to work – permission which her doctor first granted only after she was terminated – her

3

request never became ripe.

Dillard's attached a 2003 deposition given by Birdyshaw, as well as numerous exhibits introduced during that deposition, which provided as follows. Birdyshaw testified that, before the incident with Moretti on November 25, 2000, she had previously complained to Davis that Moretti had discriminated against Birdyshaw based on her sex and age. Specifically, after Davis informed Birdyshaw on one occasion that Moretti had fired another employee, Birdyshaw responded: "What is wrong with him. Is he trying to get rid of all the older managers, is he trying to clean house. What is going on."

On November 25, 2000, Moretti became angry with Birdyshaw for having not filled a particular position in the store. Specifically, Moretti asked her whether she had contacted other managers about the job opening, and Birdyshaw responded that she had done so in a managers' meeting. Moretti challenged her assertion, screamed at her, called her a liar, and told her not to "bullshit" him. Birdyshaw became terrified, told Moretti that his language was inappropriate, and walked out of the meeting. Birdyshaw made it back to her office, at which point she cried and experienced a headache and chest and arm pains. She proceeded to walk out of the store so that she could go to the doctor. Moretti caught up to her as she was walking out and grabbed her arm. He told Birdyshaw that she needed to return to

4

the store, and Birdyshaw refused, stating that he had been very rude and abusive. Moretti responded that he did not like being lied to and, after Birdyshaw insisted that she had not been lying, Moretti called her a "lying bitch." Ultimately, Birdyshaw left the mall, called a doctor, and went to the emergency room.

The following day, Birdyshaw' wrote a letter to Dillard's management describing the incident with Moretti. Birdyshaw acknowledged in her testimony that nowhere in the letter did she suggest that Moretti was discriminating against her because of her gender.

Rick Willey, the regional manager, responded to Birdyshaw's letter and, after characterizing her complaint as one alleging a "hostile and harassing work environment," explained that Birdyshaw's letter was highly embellished when compared to the account provided by Moretti and Davis. Willey did not mention any allegation of gender discrimination. The letter also informed Birdyshaw that, if she had suffered a job-related injury that made her unable to work, she could continue to receive her full salary as long she provided certification from a physician.

Birdyshaw testified that she became unable to work at that time and began to submit certifications from her doctors so providing. Various doctors placed Birdyshaw on medical leave from the end of November 2000, until her termination

5

one year later. None of the doctor's notes informed Dillard's that Birdyshaw was able to return to work if she was not required to work for Moretti.

On January 17, 2001, Moretti wrote Birdyshaw a letter explaining that he was discontinuing her salary benefits because he had discovered that she had applied for a position at another department store while claiming to be on medical leave. Approximately one month later, Dillard's reinstated Birdyshaw's salary and awarded her back pay.

On March 16, 2001, Birdyshaw wrote a letter to Burt Squires in Dillard's corporate office requesting a transfer to Yuma, Arizona. This letter provided:

> Based on my doctor's recommendation that I not return to Dillard's Madison Square Mall (under the supervision of Steve Moretti) and due to Steve Moretti's past discrimination and harassment of me (which is the basis of a currently pending EEOC charge) plus Mr. Willey's failure to adequately investigate or remedy the discrimination and harassment by Steven Moretti, I am requesting a move out of division 4.

> I am requesting a transfer to Yuma, Arizona (near my family) to be effective when my doctor releases me to return to work . . . .

Birdyshaw testified that she did not receive a response to the letter, and she never returned to work at Dillard's because they never granted her a transfer.

On September 17, 2001, upon receipt of a doctor's note extending Birdyshaw's medical leave through December 1, 2001, Davis wrote Birdyshaw a letter, informing her that her allotted year-long period of leave would expire on

November 26, 2001, and that if she did not return to work by that day, she would be terminated. In response, Birdyshaw informed Davis that her medical leave had been extended through December 1, 2001, and renewed her request for a transfer to Arizona "when the doctor says I may return to work." After her doctor extended her medical leave through February 1, 2002, Birdyshaw again wrote Davis a letter requesting an extension of her allotted leave – since she could not return to work by November 26, 2001 – and renewed her "previous request that when I am able to return to work, that I be transferred to a different division . . . ." Birdyshaw subsequently received written confirmation that she had been terminated on November 24, 2001, although this was two days premature.

In addition to Birdyshaw's deposition, Dillard's also submitted, inter alia, a 2003 deposition and 2007 declaration given by Davis. Davis explained that employees with less than ten years of service with Dillard's are entitled to six months of full salary while on medical leave and, if still unable to work after that period, are entitled to another six months of unpaid medical leave. If the employee is unable to return to work after the latter six-month period, then they are automatically terminated. Davis explained that "Birdyshaw never reported back to work after the expiration of her leave of absence and therefore her employment was terminated and she never became eligible for a transfer."

Birdyshaw responded to Dillard's summary judgment motion. She argued, inter alia, that Dillard's retaliated against her "by terminating her salary benefits while on leave and by denying her a transfer away from Mr. Moretti, effectively terminating her." Birdyshaw contended that the suspension of her salary constituted an adverse employment action and that Dillard's reason for suspending it was pretextual. With respect to the denial of her transfer, Birdyshaw emphasized that Dillard's ignored her request, thereby preventing her from returning to work within the 12-month period of allotted leave. Birdyshaw also asserted that Dillard's reliance on an unwritten policy preventing the transfer of inactive employees was pretextual.

Birdyshaw also attached an affidavit that she prepared, in which she responded to Dillard's statement of undisputed facts. Birdyshaw disputed Dillard's assertion that her November 26, 2000, letter to management did not allege age or gender discrimination. Based on Willey's response to the letter, it was clear to Birdyshaw that management "understood the nature of [her] complaint to be about unlawful harassment and discrimination."

In addition, Birdyshaw disputed Dillard's policy that inactive employees were ineligible to transfer, emphasizing that management never informed her of this policy, and she had never seen this policy. Birdyshaw also disputed Dillard's

8

assertion that she was not released to return to work at the time she requested her transfer. In this respect, Birdyshaw disputed Dillard's assertion that the earliest she could return to work was February 2002, asserting that she could have returned immediately if permitted to work for someone other than Moretti.

Dillard's replied to Birdyshaw's response to its summary judgment motion, repeating its arguments. Dillard's then supplemented its summary judgment motion and attached a deposition given by Squires. Squires testified that he took no action on Birdyshaw's transfer request because she was ineligible due to the fact that she was on leave at the time. Dillard's also could not process the request because Birdyshaw sought a transfer in the future, and there was no way for Dillard's to know if an open position would be available at that time.

The district court granted Dillard's summary judgment motions on all of Birdyshaw's claims. With respect to Birdyshaw's retaliation claims, the district court first found that the temporary suspension of Birdyshaw's salary benefits was not an adverse employment action because Dillard's rescinded its decision and retroactively paid her the salary she lost. With respect to Dillard's failure to grant her a transfer, the district court found that this did constitute an adverse employment action because Dillard's effectively required her to work with Moretti – the man who had allegedly harassed her – in order to avoid being terminated.

9

However, the district court found that Birdyshaw could not show that Dillard's reasons for denying the transfer were pretextual. Specifically, the court explained that the fact that Dillard's transfer policy was unwritten, without more, was insufficient to show pretext. The court also found that it was undisputed that Birdyshaw was terminated because she exceeded her allotted leave of absence and, therefore, Dillard's reason for terminating her was legitimate. This appeal followed.

## II.

We review the grant of summary judgment <u>de novo</u>. <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1274 (11th Cir. 2008). "Summary judgment is rendered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Id.</u> (quoting Fed.R.Civ.P. 56(c)). "In making this assessment, the Court must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." <u>Id.</u> (quotations and citations omitted).

On appeal, Birdyshaw challenges the grant of summary judgment on her two

retaliation claims, each consisting of a distinct alleged adverse employment action. First, Birdyshaw alleged that Dillard's retaliated against her by temporarily suspending her salary benefits while she was on medical leave. Second, Birdyshaw alleged that Dillard's retaliated against her by not granting her request for a transfer, thus leading to her termination. We address these claims in turn.

## A. The Temporary Suspension of Birdyshaw's Salary Benefits

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

In this case, the district court concluded that Birdyshaw's retaliation claim in connection with the temporary suspension of her salary failed because she could not show an adverse employment action. However, the district court's conclusion – that the suspension of Birdyshaw's salary was not an adverse employment action because Dillard's subsequently reinstated it – is suspect in light of our recent decision in Crawford. See id. at 972 ("[W]e too decline to hold as a matter of law that a retroactive pay raise can 'undo' the harm caused by a discriminatory or retaliatory act because such a decision could permit employers to elude liability for

11

conduct that otherwise is actionable.").

Therefore, as discussed below, we affirm on an alternative ground, namely that Birdyshaw was not engaged in any protected activity before the suspension of her salary. While Dillard's did not raise this argument in the district court, we may affirm on any ground that is supported by the record, even where a party fails to raise an argument below. See American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1059 (11th Cir.) ("[W]e may, nevertheless, affirm a district court's decision to grant or deny a motion for any reason, regardless of whether it was raised below."), cert. denied, 128 S.Ct. 491 (2007).

### 1. Birdyshaw's EEOC Charge

Title VII's Participation Clause prohibits retaliation where an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Filing an EEOC charge is statutorily protected activity in this regard. See, e.g., Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993).

In this case, it is undisputed that Dillard's suspended Birdyshaw's salary on January 17, 2001, nearly one month before Birdyshaw filed her first EEOC charge on February 15, 2001. Thus, there could not have been any causal connection between the suspension of Birdyshaw's salary and her subsequent EEOC charge.

12

See Griffin v. GTE Florida, Inc., 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, Griffin must show that the adverse act followed the protected conduct . . . .").

### 2. Birdyshaw's Internal Complaints

Title VII's Opposition Clause prohibits retaliation where an employee "has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). In this respect, Birdyshaw suggests that her verbal complaint to Davis, and her November 26, 2000, letter to management constituted protected activity.

With respect to Birdyshaw's complaint to Davis, and according to Birdyshaw's deposition testimony, she merely asked Davis whether Moretti was trying to "clean house" by getting rid of all of the "older managers." Even if this inquiry constituted a form of "opposition," Birdyshaw was not opposing any employment practice made unlawful under Title VII because she referred only to age, which is not a protected ground under the statute. See 42 U.S.C. § 2000e-2(a) (prohibiting discrimination because of an employee's "race, color, religion, sex, or national origin"). In this respect, it is worth reiterating that Birdyshaw has abandoned on appeal any claim under the ADEA. See 29 U.S.C. § 623(d) (providing a cause of action for retaliation under the ADEA).

13

In Birdyshaw's November 26, 2000, letter to Dillard's management, she described the November 25 incident with Moretti. Significantly, however, nowhere in the letter did she accuse Moretti of discriminating against her on account of a protected ground. In Coutu v. Martin County Bd. of County Com'rs, we held that an employee's internal grievance "did not constitute statutorily protected activity" because "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." 47 F.3d 1068, 1074 (11th Cir. 1995). In this case, Birdyshaw's letter simply described Moretti's harsh treatment of Birdyshaw in connection with a work-related dispute; it did not allege that Moretti was discriminating against her on account of a protected ground. Indeed, Birdyshaw acknowledged at her deposition that the letter did not inform Dillard's that Moretti was engaged in gender discrimination. See Sitar v. Indiana v. Indiana Dept. of Transp., 344 F.3d 720, 727-28 (7th Cir. 2003) ("Sitar conceded that she never told Pedigo that sex discrimination was her real problem. That is enough to doom her claim of a retaliatory transfer.").

Birdyshaw points out that Willey, in his response to her letter, characterized her complaint as one alleging a "hostile and harassing work environment." However, the substance of Willey's response focused entirely on the merits of the

14

work-related dispute between Birdyshaw and Moretti. Contrary to Birdyshaw's contention, nowhere in Willey's response did he mention any allegation of gender discrimination, as such an allegation was not contained in Birdyshaw's letter. Thus, Willey's response confirms that, under Coutu, Birdyshaw's letter was not a form of statutorily protected activity.

In sum, Birdyshaw was not engaged in any statutorily protected activity before Dillard's temporarily suspended her salary. Thus, Birdyshaw has not made out a prima facie case of retaliation, and we affirm the grant of summary judgment on Birdyshaw's first retaliation claim.

**B.    Birdyshaw's Transfer Request**

The district court first found that Birdyshaw established a prima facie case of retaliation in connection with her transfer request and termination. However, we do not address this finding because, even assuming arguendo that Birdyshaw has made out a prima facie case, she is still not entitled to relief because, as discussed below and as discussed by the district court, she cannot show that one of Dillard's proffered reasons was pretextual. See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (assuming, without deciding, that the plaintiff could establish a prima facie case because she could not show pretext).

Assuming that Birdyshaw has established her prima facie case, and because

the parties agree that her retaliation claim relies on circumstantial evidence, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." Crawford, 529 F.3d at 976 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). "If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." Id. (quotation omitted).

At the summary judgment stage, Dillard's gave two reasons why it did not grant Birdyshaw a transfer. See Chapman v. AI Transport, 229 F.3d 1012, 1030 n.19 (11th Cir. 2000) (en banc) ("[W]e take the reason proffered by the employer at the time of summary judgment, the reason presented to the district court, and examine it."). First, Dillard's explained that Birdyshaw was ineligible for a transfer because, as a matter of company policy, it did not transfer inactive employees; and second, Dillard's explained that it did not grant her request because she asked to be transferred only after she was released to work by her doctor, but her doctor did not release her until after she was terminated. By articulating these legitimate and nondiscriminatory reasons for failing to grant Birdyshaw a transfer, Dillard's has met its burden of production. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (describing the

16

employer's burden in this respect as one of production, not persuasion).

Because Dillard's articulated legitimate, nondiscriminatory reasons for not granting Birdyshaw a transfer, the burden shifts to Birdyshaw to demonstrate that these reasons were a pretext for discrimination. Crawford, 529 F.3d at 976. "A reason is not [a] pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Independent School System, 408 F.3d 763, 771 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." Chapman, 229 F.3d at 1030.

The district court in this case only addressed Dillard's first proffered reason and found that Birdyshaw could not show that Dillard's unwritten transfer policy was a pretext for discrimination. We do not address this finding, however, because the record more clearly establishes that Birdyshaw has not met her burden to show pretext with respect to Dillard's second reason, namely, that her transfer request

17

was conditioned on her being released to work and she was never so released. See Chapman, 229 F.3d at 1037 ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual.") (emphasis added).

Birdyshaw requested a transfer on three occasions, and each time she requested that the transfer take effect when her doctor released her to return to work. On March 16, 2001, she requested a transfer "to be effective when my doctor releases me to return to work . . . ." On September 26, 2001, she renewed her request for a transfer "when the doctor says I may return to work." And on October 19, 2001, she requested that Dillard's respond to her "previous request that when I am able to return to work, that I be transferred to a different division . . . ."

These requests make clear that Birdyshaw conditioned her transfer request upon her doctor releasing her to return to work. However, Dillard's is correct that Birdyshaw was placed on uninterrupted medical leave from November 2000 through the date that she was terminated one year later. Because Birdyshaw never fulfilled her own pre-condition, Dillard's had no occasion to rule on her request.

Birdyshaw emphasizes that Squires took no action on her transfer request

18

and did not check to see whether she had been released to work. This argument does not undermine Dillard's proffered reason because, while Squires testified that he took no action on the request, he explained that he did so because he knew that Birdyshaw was on leave at the time. Furthermore, the transfer request itself made clear that her doctor was prohibiting her from returning to work at that time. Thus, Squires' failure to act on the initial request was grounded in Birdyshaw's own condition.

In asserting that Dillard's knew that she would be able to return to work shortly after her making her initial transfer request, Birdyshaw also appears to attack Dillard's proffered reason on the ground that Dillard's could have immediately granted her a transfer, but allowed it to take effect prospectively when her doctor released her. While Dillard's could have theoretically granted her request in this manner, "a plaintiff is not allowed to . . . substitute [her] business judgment for that of the employer." Chapman, 229 F.3d at 1030; see also Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 1997) ("[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated."). In any event, we conclude that Dillard's decision to wait until Birdyshaw was released before granting her a

transfer was reasonable under the circumstances.[2]

Finally, and while not specifically directed at Dillard's proffered reason above, Birdyshaw contends that by not granting her a transfer while on medical leave, Dillard's intentionally created a situation that effectively prevented her from returning to work. The argument is that Dillard's knew that she was medically unable to return to work for Moretti but, at the same time, would also not grant her a transfer while she was on leave. Thus, because she could not return to work for Moretti or obtain a transfer while on leave, Dillard's prevented her from returning to work, thus creating grounds for automatic termination.

The fatal flaw in this argument is that nothing in the record indicates that Dillard's knew or should have known that Birdyshaw was capable of returning to work at a different location. Despite Birdyshaw's argument to the contrary, none of the doctors' notes granting and extending her medical leave provided that she was able to work for a manager other than Moretti; rather, they all indicated that she was completely unable to work.[3]

---

[2] We also note that, even if Dillard's had granted her a prospective transfer, a doctor did not ultimately release Birdyshaw before her termination and, therefore, she still would not have been able to return to work. See Chapman, 229 F.3d at 1023 ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.") (quotation omitted)

[3] The only documents in the record suggesting that Birdyshaw was employable for someone other than Moretti are two letters written to Birdyshaw by her insurance company. The first letter was dated one week before her termination, but there is no indication that this letter was ever sent

Furthermore, despite Birdyshaw's numerous communications with Dillard's, she never once informed it that she could return to work at another location. The only time that Birdyshaw arguably did so was in her initial transfer request, when she stated that her doctor recommended that she not return to work for Moretti. However, this statement did not explain that she was medically capable of working elsewhere. Indeed, any such an interpretation would have conflicted with the conditional nature of the transfer request, as she would have requested an immediate transfer if working for Moretti was the only reason that she could not return to work. Thus, because Dillard's had no reason to believe that Birdyshaw was capable of returning to work for a different manager, there is nothing to suggest that, by failing to rule on her transfer request while she was on leave, Dillard's intentionally created the Catch-22 situation that Birdyshaw describes.

Thus, Birdyshaw has not shown that Dillard's proffered reason for failing to grant her a transfer was a pretext for retaliation. Accordingly, we affirm the grant of summary judgment on Birdyshaw's second retaliation claim.

## III.

In sum, we conclude that the district court correctly granted summary judgment in Dillard's favor on Birdyshaw's two retaliation claims. First,

---

to Dillard's. The second letter was dated January 2002 and, therefore, could not have been transmitted to Dillard's before Birdyshaw's termination.

21

Birdyshaw was not engaged in any statutorily protected activity before the temporary suspension of her salary benefits. Second, Birdyshaw has not shown pretext with respect to Birdyshaw's proffered reason for not granting her a transfer request. Accordingly, we affirm.

**AFFIRMED.**